■ In the Matter of NANCY E. FETHERSTON, Respondent, v ANDREW V. FETHERSTON, Appellant.—In a proceeding pursuant to Family Court Act § 467 (b), for enforcement of the alimony and child support provisions of a judgment of divorce

of the Supreme Court, Suffolk County, entered August 23, 1979, the ex-husband appeals from an order of the Family Court, Suffolk County (Doyle, J.), entered January 25, 1989, which rejected his objections to a Hearing Examiner's order entered June 10, 1988, which, *inter alia,* increased the amount of alimony and child support awarded in the judgment to the total amount of $250 per week.

Ordered that the order is modified, on the law, by deleting the provisions thereof which sustained the upward modification of alimony and child support to the total amount of $250 per week, and substituting therefor a provision directing the payment of alimony in the amount of $50 per week through May 13, 1993, in accordance with the terms of the parties' 1979 stipulation; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Family Court, Suffolk County, for a hearing and determination of an appropriate award of child support, in accordance with the provisions of the Child Support Standards Act as set forth in Family Court Act § 413. Pending the new hearing and determination the ex-husband shall continue to pay child support to the ex-wife in the amount of $75 per child per week.

The parties were married on November 21, 1964. During the course of the marriage they had three children: Jennifer, born January 22, 1966; Sarah, born May 13, 1972; and Andrew, born August 23, 1974. The parties were divorced in 1979 pursuant to a judgment which incorporated but did not merge the terms of their stipulation of settlement, which provided, *inter alia,* for child support and alimony pursuant to the following decreasing schedule of payments:

| FROM/TO | ALIMONY PER WEEK | NUMBER OF CHILDREN UNDER 21 | CHILD SUPPORT PER CHILD PER WEEK | TOTAL PAYMENTS PER WEEK |
|---|---|---|---|---|
| 7/1/79-6/30/81 | $100 | 3 | $50 | $250 |
| 7/1/81-1/22/87 | $75 | 3 | $50 | $225 |
| 1/29/87-5/13/93 | $50 | 2 | $25 | $100 |
| 5/20/93-8/23/95 | $25 | 1 | $25 | $50 |

As the foregoing schedule indicates, it was the intention of the parties that the amount of money payable by the appellant ex-husband both for alimony and for child support was to decrease over time. The appellant, however, fell into arrears

and in 1980 the respondent ex-wife obtained an enforcement order, and in 1981, a payroll deduction order, each in the total amount of $250 per week. The $25 reduction which was to occur in 1981 was never realized by the appellant as he took no action to challenge the 1980 enforcement order or the 1981 payroll deduction order.

In December of 1986 the respondent commenced the instant proceeding for an upward modification of support and alimony. In support thereof she cited the appellant's allegedly increased earnings, her own decreased earnings, and the allegedly greater needs of the parties' three children. In January of 1987, however, after Jennifer's 21st birthday, the appellant cross-petitioned, *inter alia,* for a reduction in alimony and child support in accordance with the terms of the stipulation. The Family Court denied the appellant the relief he requested, and granted the respondent an upward modification of child support in the amount of $75 for each of the parties' two remaining unemancipated children. The court maintained the amount of alimony at $100. Thus, at a time when, pursuant to the parties' stipulation, the appellant should have been paying total weekly support in the amount of $100 *(i.e.,* $50 in alimony and $25 per child in support), he was still paying $250, the amount which, pursuant to the terms of the stipulation, he only should have paid through June of 1981. This appeal ensued.

The appellant is correct in contending that the Family Court erred by awarding the respondent an increased award of alimony. It is well settled that in a pre-equitable distribution divorce action, in which the parties have reached a surviving agreement concerning the payment of alimony, the spouse receiving alimony will not be entitled to an increased award of alimony absent proof that she is actually unable to support herself and is in actual danger of becoming a public charge *(see, McMains v McMains,* 15 NY2d 283; *Brod v Brod,* 119 AD2d 618; *Torok v Torok,* 106 AD2d 566; *Raines v Raines,* 80 AD2d 721). The instant record is devoid of any such evidence and accordingly, the Family Court had no valid basis to increase the respondent's alimony. Moreover, merely because there had been an intervening Family Court order, entered on consent, which enforced the then-applicable stipulation provisions, the Family Court did not have unfettered authority to rewrite the parties' agreement as to alimony. In any event, the court's reasoning underlying the increased alimony award was infirm, as the court viewed this as a vehicle to meet the children's increased needs. Clearly, any

shortcomings in child support should not be redressed by an increase in alimony.

Turning to the issue of child support, we agree with the appellant's contentions that the respondent adduced insufficient evidence to justify the upward modification thereof ordered by the Family Court. We do not concur, however, in the appellant's argument that the respondent's failure of proof should result in the automatic enforcement of the stipulation provisions governing child support pursuant to which each of the parties' two unemancipated children would be receiving a paltry $25 per week. While we recognize that the parties are certainly free to allocate their child support obligations as between them (see, Matter of Brescia v Fitts, 56 NY2d 132; Matter of Boden v Boden, 42 NY2d 210; Neckers v Neckers, 160 AD2d 693), where, as here, there are persuasive allegations that the agreed-upon levels of child support are insufficient and that the children's needs will hence go unmet, the court is not compelled to enforce the terms of the agreement to which the children were not parties (see, Maki v Straub, 167 AD2d 589; Matter of Montagnino v Montagnino, 163 AD2d 598). Rather, the appropriate procedure is to remit this matter to the Family Court for a determination of the appropriate amounts of child support, which should be ascertained in accordance with the child support guidelines contained in the Child Support Standards Act (see, Family Ct Act § 413; Gelb v Brown, 163 AD2d 189).

The Child Support Standards Act (L 1989, ch 567) was enacted into law (see, Family Ct Act § 413; Domestic Relations Law § 240), inter alia, to remedy problems caused by the failure of responsible adults to meet their child support obligations by "adopting guidelines that permit judicial discretion, and establish minimum and meaningful standards of obligations that are based on the premise that both parents share the responsibilities for child support" (L 1989, ch 567, § 1). It has been recognized that in light of the paramount interests of children in need of support and because "the CSSA represents important public policy, it should be applied to matters which commenced prior to the effective date of the act but which have not yet been finally decided, as here" (Gelb v Brown, 163 AD2d 189, 191, supra). We deem such a disposition to be appropriate in the instant case and accordingly, the Family Court shall determine the appropriate amount of support to be paid on behalf of Sarah and Andrew, in accordance with these statutory guidelines. Until the Family Court issues its order on remittitur, however, which should be done expedi-

tiously, we direct the appellant to pay the amount of $75 per child, per week, as previously ordered by the court.

Furthermore, the appellant is not entitled to any credits for alleged overpayments in child support made on behalf of Jennifer. The parties' stipulation provided for child support to cease, *inter alia,* upon the emancipation of the children or when they attained the age of 21. In pertinent part, the stipulation further provided that emancipation would occur upon the child's departure from the respondent's residence with the intent to establish a separate residence. Although the appellant testified that there were periods during which Jennifer lived with him or lived away at college, there was no evidence that she intended to establish a separate residence away from the former marital residence. As such, emancipation was never established and the appellant is thus not entitled to credits in child support for these periods.

We have examined the appellant's remaining contentions and find them to be without merit. Mangano, P. J., Bracken, Sullivan and Miller, JJ., concur.