OPINION OF THE COURT
Nora Freeman, J.
The issue before the court is whether chapter 150 of the *73 Laws of 1998 is to be applied to a visitation petition pending at the time the new law was enacted. The new statute bars, except in limited circumstances, an order for visitation to a parent convicted of the murder of the other parent. After considering the memoranda of law submitted by petitioner, respondent and the Law Guardian, the court held the new statute was applicable, and issued an order granting respondent’s motion to dismiss the petition. This decision is intended to facilitate appellate review by presenting a more complete statement of the court’s determination.
PROCEDURAL HISTORY
The visitation petition filed by John R. in Brooklyn Family Court on April 10, 1996 requested visitation with his son Michael, whose mother was deceased. (Mr. R. had not sought custody after his. wife’s demise, and custody had been awarded to Michael’s maternal grandmother, respondent herein, under docket No. V-1212/97.) Mr. R. was charged with his estranged wife’s murder shortly after his petition was filed, and on July 15, 1997 he was convicted of murder in the second degree and sentenced to a prison term of 23 years to life. An appeal of the conviction is pending. Michael, born on May 8, 1995, is now three years old. He was eight months old when his mother died of gunshot wounds to the head. It is undisputed that the child was present at the scene of his mother’s murder, but it is not clear how much he witnessed or perceived.
Pursuant to controlling case law (Matter of Youngblood v Amrhein, 216 AD2d 475 [2d Dept 1995]) forensic evaluations of the father, maternal grandmother, and child were ordered. Due to scheduling difficulties, the report prepared by Dr. Robert Raymond was not completed until April 1998. The hearing began on June 3, and continued on June 23, at which time Dr. Raymond’s testimony was complete, but petitioner’s testimony was still under way. Chapter 150 was enacted on July 7, 1998, and was effective immediately. Respondent grandmother moved promptly for dismissal. Memoranda of law were submitted and on September 17, the court granted the motion to dismiss, noting that a decision would follow.
STATUTORY AND CASE LAW GOVERNING VISITATION
Chapter 150 contains separate sections amending the Domestic Relations Law and Family Court Act to prohibit a court from awarding visitation to a convicted murderer and from *74 enforcing a prior visitation order. (L 1998, ch 150, §§ 1, 3.) The statute provides, in pertinent part:
“§ 1. Section 240 of the domestic relations law is amended by adding a new subdivision 1-c to read as follows:
“1-c. (a) Notwithstanding any other provision of this chapter to the contrary, no court shall make an order providing for visitation or custody to a person who has been convicted of murder in the first or second degree * * * of a parent, legal custodian or legal guardian of any child who is the subject of the proceeding.” (L 1998, ch 150, § 1.)
The statute provides, however, that a court may order visitation or custody where:
“(i) (A) such child is of suitable age to signify assent and such child assents to such visitation or custody; or
“(B) if such child is not of suitable age to signify ass.ent, the child’s custodian or legal guardian assents * * * or
“(C) the person who has been convicted * * * can prove by a preponderance of the evidence that:
“(1) he or she * * * was a victim of domestic violence by the victim of such murder; and
“(2) the domestic violence was causally related to the commission of such murder; and
“(ii) the court finds that such visitation or custody is in the best interests of the child.” (Domestic Relations Law § 240 [1-c] [b].)
Section 3 of chapter 150 adds a new section 1085 to the Family Court Act providing that, under the same circumstances and with the same exceptions contained in section 1 of chapter 150, no visitation or custody order shall be enforceable by the convicted murderer.
Since this court is authorized by article 6 of the Family Court Act to make initial determinations of custody with the same powers possessed by the Supreme Court (Family Ct Act § 651 [b]), any amendments to the Domestic Relations Law clearly apply to proceedings before the Family Court.
For many years, the only statutory guidance for custody orders was limited to the directive that the court “shall enter orders for custody * * * as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child” (Domestic Relations Law § 240 [1].) Despite support for legislation to codify the factors to be considered in custody/visitation *75 cases (including numerous bills drafted by and introduced at the request of the Office of Court Administration) the law governing such cases was until recently entirely case law.
Visitation is a joint right of the noncustodial parent and of the child (Weiss v Weiss, 52 NY2d 170, 175; Matter of Nancy M. v Brian M., 227 AD2d 404 [2d Dept 1996]). However, visitation is always to be premised upon a consideration of the best interests of the child. (Finlay v Finlay, 240 NY 429, 433-434 [1925].) Any determination of custody or visitation must serve the child’s best interests and promote his welfare. (Allen v Farrow, 197 AD2d 327, 333 [1st Dept 1994].)
Best interests is the standard for determining the nature of visitation, including its duration, location, frequency, and conditions. However, it is not the standard utilized in determining whether to deny visitation. “Absent extraordinary circumstances where visitation would be detrimental to the child’s well-being, a noncustodial parent has a right to reasonable visitation privileges”. (Matter of Nancy M. v Brian M., 227 AD2d 404 [2d Dept 1996], supra.) Denial of visitation is a drastic remedy that should be invoked only when there is substantial evidence that visitation would be detrimental to the child. (Matter of Vanderhoff v Vanderhoff, 207 AD2d 494 [2d Dept 1994].) “Before denying visitation to a noncustodial parent, the court should conduct a full inquiry into the matter, to determine if there are any potentially deleterious effects of such visits on the child”. (Matter of Youngblood v Amrhein, 216 AD2d 475 [2d Dept 1995], supra [citation omitted].)
Although conditions for visitation, including limitations of time, or requirements for supervision, are not unusual, a complete denial of visitation has been rare, and based on compelling circumstances presented at a full hearing. For example, in Ceasar A. R. v Raquel D. (179 AD2d 574 [1st Dept 1992]), three children had visited their father in prison but stopped after he was convicted of murdering their mother and raping their stepsister. The father’s criminal convictions, the children’s fear of him, and the fact that the children were doing well in their grandmother’s care were held sufficient to deny further visits. In Matter of Teixeria v Teixeria (205 AD2d 545 [2d Dept 1994]) the Court concluded that visitation would be inimical to the welfare of the child, based on uncontradicted testimony by the child’s psychologist that the child’s condition would prevent her from receiving any benefit from the proposed visitation. The father had made no effort to develop a relationship with the child before his incarceration for a brutal murder. His *76 abusive behavior toward the mother had caused her to flee with the child.
Only recently was the Domestic Relations Law amended to identify one specific factor to be included in the court’s determination of “best interests” in custody/visitation cases. Chapter 85 of the Laws of 1996 mandates consideration of the impact on the child of domestic violence whenever such allegations are proven by a preponderance of the evidence. (See, Matter of E. R. v G. S. R., 170 Misc 2d 659 [Fam Ct, Westchester County 1996].)
In this context, chapter 150 is indeed an extraordinary enactment. Volumes of decisional law explicating the seemingly endless variations in fact patterns had guided Trial Judges for decades. Even the most extreme scenarios, in which parents incarcerated for violent crimes until well after their young children would reach adulthood, required not only evidentiary hearings (Ceasar A. R. v Raquel D., supra) but forensic evaluations as well (Matter of Youngblood v Amrhein, supra). The prohibition on visitation enacted in chapter 150, although applicable to only a very small number of cases, is therefore a dramatic change in the law, reflecting a legislative determination that such an extreme harm — murder of the child’s parent — demonstrates that visitation is not in the child’s best interests.
RETROACTIVE APPLICATION OF STATUTES
It is well settled that statutes are presumptively prospective in their application, absent expressed legislative intent to the contrary. (Morales v Gross, 230 AD2d 7 [2d Dept 1997]; McKinney’s Cons Laws of NY, Book 1, Statutes §51 [b], [c].) “ ‘Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and conform their conduct accordingly; settled expectations should not be lightly disrupted’ ”. (Morales v Gross, supra, at 9-10 [citations omitted].) In interpreting a statute a court “‘should attempt to effectuate the intent of the Legislature’ ”. (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998].) As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be with the language itself, giving effect to the plain meaning thereof. (Majewski v Broadalbin-Perth Cent. School Dist., supra, at 583.)
The prohibition on enforcement of a prior order of custody or visitation, set forth in section 3 of chapter 150, is obviously ret *77 roaetive. The new section 1085 of the Family Court Act provides that “No visitation or custody order shall be enforceable * * * by a person who has been convicted of murder * * * of a parent” (Family Ct Act § 1085 [1]). To interpret chapter 150 as permitting a court to make a new visitation order— which immediately becomes unenforceable — is an absurdity which should be avoided. (McKinney’s Cons Laws of NY, Book 1, Statutes § 145.)
The court rejects petitioner’s arguments that the new statute is “punitive” or an ex post facto measure creating a new sanction for petitioner’s criminal act. As stated earlier, visitation with his son is not solely Mr. R’s “right”. Visitation is a right jointly shared by parent and child, intended to benefit both. Nevertheless, it is the child’s interest that is paramount and it is the child’s interest that the new legislation addresses. The Legislature has twice demonstrated its concern for the impact on children of acts of domestic violence inflicted by one parent against the other, first in the 1996 amendments, and now in chapter 150. These laws reflect a public policy determination that children are to be protected from exposure to domestic violence, and as such they may be considered remedial in nature.
Remedial legislation is usually given retroactive application. The Child Support Standards Act (CSSA) was applied to cases filed but not completed before its enactment, because of “the paramount interests of children in need of support and because ‘the CSSA represents important public policy’ ”. (Matter of Fetherston v Fetherston, 172 AD2d 831, 834 [2d Dept 1991]; see also, Matter of Pedersen v Pedersen, 176 AD2d 729 [2d Dept 1991].) Surely, protecting a child’s mental and physical well-being through appropriate visitation orders is as compelling a public policy as securing financial support. Based on the statute’s own terms and its remedial nature, the court holds that it should be applied to custody and visitation proceedings pending on the date it became effective.
APPLICATION TO THIS CASE
The court has reviewed the undisputed facts in light of the new statute’s broad prohibition and narrow exceptions. Mr. R. was convicted of second degree murder of his son’s mother. Michael, only three years old, is too young to agree to visits. Michael’s maternal grandmother, who has legal custody, opposes visitation. There is no claim that petitioner was himself the victim of domestic violence inflicted by the deceased.
*78 The court therefore concludes that chapter 150 is applicable; that the exceptions to the prohibition on visitation orders do not fit the facts of this case; and that the motion to dismiss should be granted.
This decision supplements the court’s order of dismissal dated September 17, 1998.