4

[720 NYS2d 616]

In the Matter of Scott JJ. and Another, Children Alleged to be Neglected. Ulster County Department of Social Services, Respondent; Vincent JJ., Appellant. (Proceeding No. 1.)

In the Matter of Matthew HH. et al., Respondents, v Vincent JJ., Appellant. (Proceeding No. 2.)

Third Department, February 8, 2001

APPEARANCES OF COUNSEL

*Paul L. Gruner, Public Defender,* Kingston (*Denise Y. Dourdeville* of counsel), for appellant.

*Page Lockhart,* Kingston, for respondent.

*John Ferrara, Law Guardian,* Monticello, for Scott JJ. and another, infants.

**OPINION OF THE COURT**

CARPINELLO, J.

Respondent, the father of Scott JJ. (born in 1990) and Dakota

JJ. (born in 1995), stands convicted of murder in the second degree for killing his estranged wife, the mother of these two children. He is currently serving 20 years to life in prison for this crime. The precise details of the murder are not readily apparent from the record in these proceedings. Suffice it to say, it appears that on the evening of April 11, 1997, while the children were in his physical care and custody, respondent left his residence (leaving the children, then six years old and 18 months old, alone), went to the residence where his estranged wife was babysitting for a family member and killed her. Following the death of their mother and arrest of their father, the children began living with their maternal grandparents, petitioners Matthew HH. and Rachel HH. (hereinafter collectively referred to as petitioners). An agreement was ultimately reached between respondent and petitioners, reduced to an order, whereby they would share joint custody of the children with primary physical custody to petitioners and visitation to respondent as mutually agreed upon. For a time prior to his conviction, petitioners would bring the children to visit respondent at the County Jail.

Shortly after his conviction, a neglect petition was filed by petitioner Ulster County Department of Social Services (hereinafter the Department) charging that respondent neglected the children by intentionally causing the death of their mother at a time when they were in his care. A separate, nearly simultaneous, petition was filed by petitioners for sole custody of the children. The basis of this latter petition was that it would be in the best interests of the children to have sole custody awarded to them because respondent had been convicted of the murder of their mother, an act that constitutes extraordinary circumstances under the principles espoused in *Matter of Bennett v Jeffreys* (40 NY2d 543). Petitioners also requested that the prior order of custody and visitation be terminated under Family Court Act § 1085.

Respondent, in turn, petitioned for visitation, claiming that his eldest son, Scott, who had just turned eight, desired to visit him in prison and that petitioners' "vindictive acts" prevented this from happening. Three separate motions for summary judgment ensued, one by the Department on its neglect petition and one each by the Law Guardian and petitioners, respectively, on the custody and visitation petition. In opposing the Department's motion, respondent's attorney argued that "while a certificate of conviction is prima facie evidence of guilt

it is not inconceivable that * * * Family Court could find [respondent's] continued denial of guilt to be credible and that he is, in fact, innocent, with the result being that the [c]ourt make no finding of neglect." Other than this unsupported statement of surmise by respondent's attorney, and a similar averment by respondent that he was innocent and would "prevail on appeal," no proof in admissible form was ever offered in opposition to summary judgment on the issue of whether respondent intentionally murdered the children's mother. In opposing summary judgment in the custody and visitation proceeding, respondent did not specifically object to petitioners' request for sole custody; rather, he argued that visitation should not be summarily denied.

Family Court granted the Department's motion for summary judgment, finding that respondent's act of murdering the children's mother was of such seriousness that no proof of actual harm or injury to the children was required. Finding that respondent demonstrated "a fundamental misunderstanding of the responsibilities of parenthood" by murdering the children's mother, Family Court determined that the children had been neglected by him and set the matter down for a dispositional hearing. Family Court also determined that respondent's conviction made him unfit to exercise joint custody with petitioners and, accordingly, modified its prior order by granting sole custody to petitioners. Following the dispositional hearing, the primary purpose of which was to consider the issue of visitation between respondent and the children, Family Court terminated all visitation with the caveat that there could be written and/or telephone contact at petitioners' discretion. These appeals by respondent follow.

■ We address first the propriety of Family Court's decision to grant summary judgment in the neglect proceeding, summary judgment being a procedural mechanism which is indeed applicable to proceedings under Family Court Act article 10 (see, Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., 83 NY2d 178, 182; see generally, Matter of Baby Girl F., 277 AD2d 235). Protesting his innocence,[1] claiming that his incarceration prevents any physical threat to the children and further claiming that there is no competent evi-

---

1. Although respondent generally maintains that he is innocent of his estranged wife's murder, he offers no explanation for the jury's finding of guilt. Notably, he has yet to perfect his appeal from that conviction (he is represented by the same attorney in these proceedings and the criminal matter).

dence in the record regarding any actual or prospective emotional harm to the children from his acts, respondent contends that Family Court erred in granting the Department's motion for summary judgment in the neglect proceeding. We are unpersuaded.

As relevant here, the Legislature has defined a neglected child as one whose mental or emotional condition has been impaired as a result of his or her parent's failure to exercise a minimum degree of care in providing proper supervision or guardianship by any act of a serious nature requiring the aid of the court (*see*, Family Ct Act § 1012 [f] [i] [B]). It is undisputed that respondent was convicted of murder in the second degree and that he committed this intentional act against the children's mother during a time period when the children were in his care and custody. In our view, these facts most decidedly constitute prima facie evidence that respondent neglected the children (*see, Matter of Vere C.*, 181 Misc 2d 406; *see generally, State ex rel. Children, Youth & Families Dept. v Joe R.*, 123 NM 711, 945 P2d 76; *In re C.M.J.*, 278 Ill App 3d 885, 663 NE2d 498).

Absent the extraordinary circumstance of domestic violence, we need neither the testimony of witnesses nor the reports of experts to establish that one parent's *intentional* murder of the other constitutes prima facie evidence that the murdering parent has indeed neglected the children simply by committing that very heinous act. Respondent's conduct deprived his children of their mother by death and their father by incarceration; the emotional scars from these profound deprivations are manifest. Respondent's behavior was so outrageous that it obviously harmed the children and the lack of testimony of "actual injury" to them is not fatal to the Department's case under these compelling circumstances (*see generally, Matter of Christina LL.*, 233 AD2d 705, 708-709, *lv denied* 89 NY2d 812). Moreover, respondent failed in his burden of raising a genuine issue of fact (*see, Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M.*, 83 NY2d 178, 183, *supra*) to rebut the prima facie showing that his heartless conduct in murdering his children's mother somehow did not impair their mental or emotional condition, or that such conduct did not rise to a level of a failure on his part to exercise a minimum degree of care toward them or that his conduct was not a serious act requiring the aid of the court (*see*, Family Ct Act § 1012 [f] [i] [B]). Thus, summary judgment was properly awarded on this petition.

■ Turning to Family Court's decision on the custody and visitation petition, respondent's conduct was itself an extraordinary circumstance sufficient to modify the prior custody and visitation award by granting petitioners sole custody (*see generally*, *Matter of Ratliff v Glanda*, 263 AD2d 816; *see also*, Family Ct Act § 1085). As noted, respondent does not specifically object to this aspect of the court's decision. Instead, he argues that, as Scott's biological parent, he should not be summarily denied visitation with him even though he has been convicted of a crime. He concedes, however, that Family Court Act § 1085 is the controlling authority on this issue. With that concession, we now turn to the statute itself.

The instant proceedings give this Court the first opportunity to address this recent legislative enactment (*see*, L 1998, ch 150). Touted as "an extraordinary enactment" (*John R. v Marlene C.*, 179 Misc 2d 72, 76), Family Court Act § 1085 represents a significant change in family law vis-à-vis the rare but unthinkable scenario whereby one parent intentionally murders another yet seeks custody or visitation of the children left behind to deal with their double tragedy (*see*, Governor's Mem Approving L 1998, ch 150, 1998 NY Legis Ann, at 95).[2] In sum, the statute prevents a court from making an award of custody or visitation to the murdering parent unless one of the following situations exists: the child is of suitable age to assent to custody or visitation and does assent, the child's legal custodian or guardian assents to custody or visitation in the event that the child is not of suitable age to do so or the convicted parent can prove by a preponderance of the evidence that he or she was the victim of domestic violence by the victim of the murder and that same was causally related to the commission of the murder (*see*, Family Ct Act § 1085 [1] [i] [A-C]). In any of these three events, however, the court must still make an additional finding that visitation or custody is in the child's best interest (*see*, Family Ct Act § 1085 [1] [ii]). This law undoubtedly reflects a legislative determination that the very act of murder in the first or second degree of a child's parent is so extreme that a presumption arises, albeit rebuttable, that neither custody nor visitation is appropriate or in that child's best interest. Prior to its enactment, and currently as to all other crimes, the general rule concerning parents convicted of a crime is that incarceration alone does not render custody or visitation inappropriate (*see, e.g.*, *Matter of Rogowski v*

---

**2.** We recognize that the statute is written in broader terms than one parent murdering the other parent.

*Rogowski*, 251 AD2d 827; *Matter of Hadsell v Hadsell*, 249 AD2d 853, *lv denied* 92 NY2d 809; *Matter of Mohammed v Cortland County Dept. of Social Servs.*, 186 AD2d 908, *lv denied* 81 NY2d 706).

Here, respondent claims that Family Court's decision to terminate visitation was made without addressing the issue of whether Scott might be of suitable age to assent under the statute. This contention can be readily disposed of by this Court. Family Court *did* address, in great detail, the issue of whether Scott might be of a suitable age to signify his assent to visitation in its dispositional decision and ultimately reached the conclusion, based on the evidence before it, that Scott was not old enough to make such a decision. Upon our review of the evidence in the record, we likewise find that the statutory exception outlined under Family Court Act § 1085 (1) (i) (A) was not proven.

Virtually no testimony regarding Scott's purported assent to visitation was produced at the hearing. Rachel HH. admitted on cross-examination that Scott, like any other child generally, in all likelihood would like to see respondent, but she had never specifically inquired of him. Respondent did not testify at the hearing and neither his attorney nor the Law Guardian put on any witness to actually establish that Scott indeed assented to visitation.[3] Thus, in our view, the record is void of competent evidence that Scott wanted to visit respondent in State prison in the first instance. In any event, and more importantly, there was certainly no evidence offered that Scott was of suitable age to signify assent to visitation.

To be sure, it is not enough to prove that a child assents to visitation under Family Court Act § 1085 (1) (i) (A). Rather, the statute specifically refers to a "child [who] is of *suitable* age to signify assent" (Family Ct Act § 1085 [1] [i] [A] [emphasis supplied]). In interpreting the statute, we need not, and indeed will not, render any bright line age limits concerning what constitutes a suitable age to signify assent to visitation, particularly since the Legislature has not itself done so (*compare*, Family Ct Act § 1055-a [6] [c]; § 343.1 [2]; Domestic Relations Law § 111; CPL 60.20 [2]). Rather, the determination of whether a child is of a suitable age to signify assent to visitation under Family Court Act § 1085 (1) (i) (A) is a factual one to be made by Family Court on a case-by-case basis (*see*, 4

---

**3.** We further note that there was apparently no request by anyone to have the child interviewed by Family Court in camera.

Brandes, Law and the Family New York § 1:71.1, at 6-7 [2d ed, 1999 Cum Supp]; *see generally*, Letter of Senator John De Francisco in Support, Bill Jacket, L 1998, ch 150) with due consideration to the child's maturity and demonstrated understanding of the circumstances.

Here, no evidence was offered at the hearing to demonstrate that this eight-year-old boy, who was described by the court-appointed psychologist as "average" and who had to repeat the third grade because of low grades and inattentiveness, was of a suitable age to signify his assent to visitation. No evidence was introduced establishing that this child was mature enough to truly understand and appreciate the nature of his father's incarceration and the ramifications, emotional and otherwise, of visiting with him despite the fact that his father has been convicted of intentionally killing his mother and the daughter of his now legal custodians. Because Scott was not proven to be of sufficient age for his purported wishes to be meaningful (*compare, Matter of Jennifer WW.*, 274 AD2d 778, *lv denied* 95 NY2d 764; *Matter of Carnese v Wiegert*, 273 AD2d 554; *Matter of Kavanakudiyil v Kavanakudiyil*, 203 AD2d 250; *Koppenhoefer v Koppenhoefer*, 159 AD2d 113), Family Court did not abuse its discretion in concluding that the exception outlined under Family Court Act § 1085 (1) (i) (A) was not established.

Even assuming that Scott assented to visitation *and* was of suitable age to so assent, Family Court Act § 1085 (1) (ii) also requires an additional analysis of whether visitation is in the best interest of a child prior to such an award. Indeed, the wishes of a child do not always reflect his or her best interest (*see, Matter of Nehra v Uhlar*, 43 NY2d 242, 249; *Matter of Carballeira v Shumway*, 273 AD2d 753, 755, *lv denied* 95 NY2d 764). Here, Family Court ordered a psychological evaluation of all the parties and the children prior to the dispositional hearing. The psychologist's written report was admitted into evidence at the hearing. In it, he opined that it is important for both children to develop a new attachment with petitioners and that "[a]nything that interferes" with that attachment would be "harmful to them in the long run." The psychologist specifically found that visitation with respondent would interfere with the children's attachment to petitioners; he therefore recommended that same should be avoided until the children are stabilized in their new setting. No contradicting expert evidence was offered by respondent. Under these circumstances, Family Court did not err in relying on this expert's opinion in determining that the best interests of both children

would be fostered by denying visitation (*see, Matter of Cook v Morales*, 275 AD2d 938; *Matter of Mohammed v Cortland County Dept. of Social Servs.*, 186 AD2d 908, *supra*; *compare*, *Matter of Chaya S. v Frederick Herbert L.*, 266 AD2d 219; *Matter of Buffin v Mosley*, 263 AD2d 962; *Matter of Folsom v Folsom*, 262 AD2d 875).

CARDONA, P. J., MERCURE, SPAIN and ROSE, JJ., concur.

Ordered that the amended order and order are affirmed, without costs.