Matter of Strobel v Danielson (2018 NY Slip Op 02223)





Matter of Strobel v Danielson


2018 NY Slip Op 02223


Decided on March 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 29, 2018

523856

[*1]In the Matter of SHEILA STROBEL, Respondent,
v
WILLIAM H. DANIELSON, Appellant. (Proceeding No. 1.)
In the Matter of GLORIA M. COTTO, Respondent,
v
v
WILLIAM H. DANIELSON, Appellant. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date: January 8, 2018

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Rumsey, JJ.


Luciano J. Lama, Ithaca, for appellant.
Law Office of William L. Terry, Oneonta (Patricia L. Canner of counsel), for Sheila Strobel, respondent.
The Colwell Law Group, LLC, Albany (Erica K. Waters of counsel), for Gloria M. Cotto, respondent.
Mark A. Schaeber, Liverpool, attorney for the child.


Egan Jr., J.P.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Chenango County (Revoir Jr., J.), entered [*2]August 4, 2016, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent (hereinafter the father) is the father of the subject child (born in 2006). In August 2013, the father and the child's mother filed competing petitions seeking custody of the child. In December 2013, while the parents' custody petitions remained pending, the mother was fatally injured during an assault perpetrated by the father, who was arrested and charged in conjunction therewith [FN1]. Two days later, petitioner Sheila Strobel (hereinafter the grandmother), the child's maternal grandmother, petitioned by order to show cause for sole custody of the child based on allegations that the father had killed the mother in the presence of the subject child, and Family Court awarded her temporary custody of the child. In January 2014, petitioner Gloria M. Cotto (hereinafter the aunt), the child's paternal aunt, also petitioned for sole custody of the child.
At the parties' initial appearance, Family Court took judicial notice of the fact that the mother was deceased and, in turn, dismissed all petitions then pending as between the father and the mother, including an order to show cause that had been filed by the father with regard thereto. Family Court also continued temporary custody of the child with the grandmother and ordered a home study investigation with respect to both the grandmother's and the aunt's respective homes. In April 2014, Family Court modified the temporary custody order to provide the aunt with visitation, and the matter was scheduled for a fact-finding hearing [FN2]. After several adjournments, Family Court ultimately adjourned the fact-finding hearing pending resolution of the father's criminal charges. The father ultimately pleaded guilty to the crime of murder in the second degree [FN3]. Following the father's conviction, the parties appeared before Family Court for settlement conferences in March 2016 and May 2016. In August 2016, Family Court, without a hearing and upon the consent of the grandmother and the aunt, awarded the grandmother sole custody of the child, with scheduled visitation to the aunt. The father now appeals.[FN4]
We affirm. Family Court did not violate the father's fundamental due process rights [*3]when it approved the stipulation between the grandmother and the aunt and awarded sole custody of the child to the grandmother, with visitation to the aunt. While a fact-finding hearing is generally necessary to determine a contested custody petition, the right to such a hearing is not absolute (see S.L. v J.R., 27 NY3d 558, 563 [2016]). Here, no such hearing was required as the mother was deceased, the father had been convicted of her murder and the cross-petitioning grandmother and aunt had entered into a stipulation resolving the issues of custody and visitation. The death of the mother and the arrest, incarceration and ultimate conviction of the father for her murder were sufficient, in and of themselves, to establish the requisite extraordinary circumstances to confer standing as a matter of law on the grandmother and the aunt for purposes of seeking custody of the child (see Matter of Scott JJ., 280 AD2d 4, 9 [2001]; Matter of Ratliff v Glanda, 263 AD2d 816, 817 [1999]; see also Family Ct Act § 1085)[FN5]. Moreover, Family Court ordered, and was subsequently provided, two home study investigations — one from the Chenango County Department of Social Services with regard to the grandmother and one from the New York City Administration for Children's Services with regard to the aunt — that provided insight into, among other things, the housing and financial situations of each household and concluded that either household would be a suitable placement resource for the child. Meanwhile, the record is devoid of any proof indicating that the father has sought custody or visitation with the child since his incarceration and, based on the stipulation between the grandmother and the aunt, there were no factual issues left to resolve that warranted a hearing (see Matter of Mary GG. v Alicia GG., 106 AD3d 1410, 1411-1412 [2013], lv denied 21 NY3d 863 [2013]; Matter of Balram v Balram, 53 AD3d 808, 810 [2008], lv denied 11 NY3d 708 [2008])[FN6]. Moreover, because Family Court never conducted a hearing, the father cannot credibly argue that he was improperly excluded from participation in same (see Matter of Otrosinka v Hageman, 144 AD3d 1609, 1610 [2016]; Matter of Mary GG. v Alicia GG., 106 AD3d at 1411-1412).
The only question, therefore, is whether Family Court committed reversible error when it approved the subject stipulation outside of the father's presence and without obtaining his consent. Absent a willful refusal to appear or a waiver of appearance, "an incarcerated parent has a right to be heard on matters concerning his [or her] child" (Matter of Hohenforst v DeMagistris, [*4]44 AD3d 1114, 1116 [2007] [internal quotation marks, brackets and citation omitted]). On August 1, 2016 — just three days before a scheduled court appearance and two days prior to entry of the order presently being appealed — the father filed a consent to change attorney form, relieving his counsel and electing to proceed pro se. Certainly, under these circumstances, the preferred course of action would have been for Family Court to advise the father of the proposed stipulation and provide him with an opportunity to appear — either personally or telephonically — and apprise the court as to his position with regard thereto (see generally Matter of Eileen R. [Carmine S.], 79 AD3d 1482, 1483 [2010]). Notwithstanding, the record reveals that the father was a named respondent on both the grandmother's and the aunt's petitions, which were filed in December 2013 and January 2014, respectively. Despite being incarcerated throughout the duration of the proceedings, the father was provided notice of all relevant court appearances, he appeared with counsel at appearances in January 2014 and April 2014 and was otherwise represented by counsel throughout the nearly 2½ years in which the subject petitions were pending, including settlement conferences held in March 2016 and May 2016.
With respect to the subject stipulation, the father's counsel was copied on correspondence between counsel for the grandmother and the aunt wherein the terms of a potential stipulation were actively being negotiated, without any objection from the father. The father's sole assertion throughout the pendency of this protracted proceeding was that he preferred for custody of the child to be awarded to the aunt in lieu of the grandmother — a position that was advocated for by his counsel, on the record, at prior court appearances before Family Court. Notably, the father never cross-petitioned for any other affirmative relief, his parental rights were not being terminated and, at all relevant times, he remained free to petition for whatever affirmative relief he felt that he was entitled to under the circumstances (see Matter of Cardozo v Wlasiuk, 23 AD3d at 931-932; compare Matter of Randy K. v Evelyn ZZ., 263 AD2d 624, 625 [1999]). Accordingly, as this custody and visitation matter was pending for over 2½ years and inasmuch as Family Court's determination effectively served to maintain the status quo and did not otherwise implicate the parental rights of the father nor preclude the father, as an interested parent, from filing any additional petitions in the future as circumstances might warrant, we find that Family Court's failure to produce or otherwise obtain the father's consent prior to approving the parties' stipulation was, under these circumstances, harmless error (compare Matter of Cardozo v Wlasiuk, 23 AD3d at 931-932).
Lynch, Clark, Mulvey and Rumsey, JJ., concur.
ORDERED that order is affirmed, without costs.



Footnotes

Footnote 1: The precise details of the mother's death are not readily apparent from the record before us; however, as a result of the injuries that she sustained during the assault, she died the following day. Upon the mother's death, the father's charges were upgraded to include, among others, murder in the second degree.

Footnote 2: In June 2014, the grandmother filed another petition alleging a violation of the temporary custody order by the aunt.

Footnote 3: The father's appeal of that judgment of conviction is presently pending before this Court.

Footnote 4: To the extent that the father attempts to challenge Family Court's December 2013 dismissal of the petitions filed by him and the mother and his order to show cause in support thereof, such claim is not properly before us as the father did not file a notice of appeal from this order of dismissal (see Matter of Gonzalez v Hunter, 137 AD3d 1339, 1341 n [2016], lv dismissed and denied 27 NY3d 1061 [2016]; Matter of Ashley D., 268 AD2d 803, 805 [2000], lv denied 94 NY2d 763 [2000]).

Footnote 5: We recognize, as did all the parties, that the Family Court Judge also presided over the father's murder trial. Contrary to the father's argument, this is not a situation where a court takes judicial notice of a party's criminal background without notice to that party (see Matter of Dakota CC. [Arthur CC.], 78 AD3d 1430, 1431 [2010]).

Footnote 6: Parenthetically, we note that the father is not statutorily entitled to custody or visitation because of his conviction for murdering the mother (see Family Ct Act § 1085; Domestic Relations Law § 240 [1-c] [a]; Matter of Rumpel v Powell, 129 AD3d 1344, 1346 [2015]). Nor has he petitioned for custody or visitation or otherwise attempted to establish that he is entitled to same based on the narrow statutory exceptions set forth in Family Ct Act § 1085; accordingly, the father is not entitled to any affirmative relief at the present time (see Matter of Rumpel v Powell, 129 AD3d at 1346; Matter of Cardozo v Wlasiuk, 23 AD3d 930, 931-932 [2005], lv denied 6 NY3d 706 [2006]).