OPINION OF THE COURT
Hugh R. Elwyn, J.
In this child protective proceeding brought under article 10 of the Family Court Act in which there is pending before the court an application by the Commissioner of Social Services for an extension of placement (Family Ct Act, § 1055) the attorney for the respondents moves for an order dismissing the court-appointed Law Guardian in the interests of justice upon the ground that the Law Guardian is biased in favor of the continued placement of the children in foster care.
The attorney for the respondent in his moving papers concedes-that "Mr. Samoff has performed in a diligent and zealous manner in the past and in so doing has upheld the highest tradition of the bar”, but asserts as reason for his relief from further responsibility in this case that the Law Guardian is no longer neutral; that he has strenuously advocated the permanent termination of the Santoskys’ parental rights before this court and when the petition for permanent termination was denied sought to join in the appeal to the Appellate Division and was denied that right by the appellate court only because it was determined that his interests were identical with the appellant’s (Department of Social Services) and that his representation would be redundant; that he helped the petitioner frame the petition before the court and that he intends to argue in favor of further extension of placement; in short, that even before a hearing is held that the Law Guardian has made up his mind as to the proper disposition of the proceeding — namely, continuation of the placement.
Although New York guaranteed counsel for children who are the subject of Family Court proceedings (Family Ct Act, § 241) some five years before the much heralded 1967 decision by the Supreme Court, Matter of Gault (387 US 1) which is limited to juvenile delinquency proceedings, the role of the Law Guardian is nowhere particularly defined. While the role of Law Guardian in article 7 proceedings is generally regarded as adversarial (see, e.g., Matter of Gault, supra; Matter of Winship, 397 US 358; Code of Professional Responsibility, *841 DR7-101, subd [A]; IJA — ABA Juvenile Justice Standards Project, "Standards Relating to Counsel for Private Parties” [1976]), the proper role of the Law Guardian who represents children who are the subject of child protective proceedings (Family Ct Act, art 10) is somewhat unclear, or at least nowhere definitely stated.
It is, however, the respondent’s position that the Law Guardian should assume a position of neutrality, at least at the outset of the proceeding, and should not have determined in advance of a hearing that the child’s "best interests” will be promoted by any particular disposition. This is not to say that the Law Guardian may not form an opinion, and advance a position as the case progresses. But, it is argued, there can be scant purpose served when, as in this case, the Law Guardian has made up his mind as to the "proper” disposition of the proceeding, that the interests of the children are best served by the permanent termination of parental rights at best, and continued placement out of the parents’ home as second best. In such case, it is said, he can no longer effectively serve the role of Law Guardian and he becomes instead an auxilliary counsel for the petitioner.
The truth of the respondent’s charge of bias and partiality in favor of the termination of the parents’ rights and continued foster care placement for the children is not denied by the Law Guardian. In his affidavit in opposition to the motion the Law Guardian concedes that any thoughts of neutrality he might have harbored at the beginning of the proceedings he has been required to abandon after hearing the evidence in the case; that any opinion adverse to the respondent’s he may have formed has been confirmed by court’s finding of parental neglect; accordingly, he feels justified in taking a "partisan position”.
What little authoritative writing there is on the subject of the proper role of the Law Guardian seems to support the respondent’s position that the Law Guardian should not make a judgment as to which of the child’s interests should be given paramount consideration, for to do so involves the exercise of a judicial function. In one of the few published articles addressing this issue, the assistant attorney-in-charge of the Family Court branch of the New York City Legal Aid Society, which handles innumerable such cases each year, has written: "Should the law guardian make a judgment as to which of the child’s interests should be given paramount consideration? We *842 think not. Such a judgment requires an assessment of the evidence to be offered by both sides, including the credibility of the various witnesses and the probative value of their anticipated testimony and of any documentary or other evidence which may be offered. Clearly, this is a judicial function. For the law guardian to undertake such an assessment, make a judgment on the basis of that assessment as to which of his client’s interests should receive paramount consideration, and then tailor his trial strategy accordingly, is a self-servicing exercise in which the lawyer judges the ultimate issues in the case and then sets out to implement his own judgment. Furthermore, an 'adversary’ approach taken by a law guardian on the basis of a pretrial assessment of the evidence pro and con would frequently result in depriving the court of relevant evidence. For example, if the law guardian determined that the best interests of the child would be served by leaving the child in his home, he would not seek to introduce evidence overlooked by petitioner’s counsel tending to show that continued custody by the parent might be harmful * * * It seems to us axiomatic that the best interests of the child are more likely to be identified and protected when the court is able to weigh all the relevant and reliable evidence which is available, at both the fact-finding and the dispositional stages of the proceeding. From this perspective, a meaningful role for the law guardian appears; for the interests of the petitioner and the respondent are such that full presentation of all relevant and reliable evidence is not always the natural result of litigation, without participation of a law guardian for the child.” (Dick, Role of the Law Guardian in Child Protective Cases, NYLJ, April 3, 1972, p 1, col 3; p 4, col 7; see, also, Isaacs, The Role of the Lawyer in Representing Minors in the New Family Court, 12 Buff L Rev, 501.)
If the respondent’s motion to dismiss the Law Guardian for bias in favor of a predetermined "proper” disposition of the case had been made at the very outset of these proceedings and had the Law Guardian candidly conceded, as he now does, that he had a bias for a particular disposition, the court would have little hesitancy in granting such a motion and relieving the Law Guardian of his appointment. At the outset of the case, a Law Guardian, who in addition to his role as counsel, advocate and guardian serves also in a quasi-judicial capacity in that he has some responsibility, at least during the dispositional phase of the proceeding, to aid the court in *843 arriving at a proper disposition, should, like the Judge, be neutral. At some point in the hearing he has a right to formulate an opinion and then to attempt to persuade the court to adopt that disposition which, in his judgment, will best promote his ward’s interest. But certainly the Law Guardian’s conclusions in these matters should not be reached in advance of a hearing and without knowledge of the facts.
The principle trouble with the respondent’s motion, which in another time frame and context, could have much merit, is that it comes too late in the game. The proceeding now before the court — the commissioner’s application for a one-year extension of prior orders of placement — is but the latest in a whole protracted series of legal proceedings involving the Santosky children. These proceedings involve an adjudication that the Santosky children were neglected children within the meaning of article 10 of the Family Court Act, and their placement with the Commissioner of Social Services. The original orders of placement of each of the three children has twice been extended and the current application for extention is the third. In the meantime, there has been litigated in this court a proceeding to have the Santosky children declared to be permanently neglected and their parents’ rights terminated (Family Ct Act, art 6) which resulted in a dismissal of the proceeding (see Matter of Santosky, 89 Misc 2d 730, affd sub nom. Matter of John W., 63 AD2d 750).
Throughout all of these proceedings which commenced more than five years ago and which are not yet terminated, Mr. Jay Samoif has served as the childrens’ court-appointed Law Guardian. The court has no criticism whatever of Mr. SamofFs conduct as the children’s Law Guardian and indeed concurs with the respondent’s counsel when he says that Mr. "Samoif has performed in a diligent and zealous manner in the past and in so doing has upheld the highest tradition of the bar”. That being the case there is no possible reason for his removal other than that during the course of the performance of his duties he has formed an opinion that the interests of the children would be best served by their continuance in foster care, rather than by return to their parents. That he has reached such a conclusion after all the years this litigation has been pending and the voluminous testimony adduced therein is not suprising, for it certainly is a conclusion that a reasonable view of the evidence could support. The court hastens to add, however, that it has reached no such conclu *844 sion and will reserve judgment on that issue until after the commissioner has presented his evidence in support of his application and the respondents have been afforded an opportunity to be heard; in other words, until after an evidentiary hearing has been had.
It has already been conceded that at some point in the proceeding the Law Guardian has a right to formulate an opinion and argue for a particular disposition. The confusion in the thinking about the Law Guardian’s role arises from viewing the pending proceeding in isolation, as a new and independent proceeding, which it is not; rather, it is just one more legal proceeding in an unbroken mosaic. Viewed as a new and independent proceeding the Law Guardian’s formulation of an opinion and the taking of a partisan position in favor of a particular disposition is subject to criticism and could warrant removal. Viewed as but the latest round in a continuum of legal proceedings involving the same parties and essentially the same issues, his formulation of an opinion and the taking of position in support of continued placement is not. In fact, it is probably no more than the zealous and assiduous performance of his duty. In any event, I do not find in it sufficient cause to justify his dismissal.
In addition to lack of good and sufficient cause there are at least two more reasons why the Law Guardian should not be removed.
First, it would constitute a dangerous precedent for a court to relieve a lawyer from the discharge of his duty because he has been zealous in the advocacy of his client’s cause and has taken a position in the case which is offensive to the other side, or even to the court. Such action would rightly subject the court to criticism and would be contrary to the longstanding and cherished tradition of an independent bar in the service of sometimes unpopular clients and causes.
Secondly, the Law Guardian is thoroughly familiar with all the prior proceedings had herein and the voluminous record. A new Law Guardian would probably be derelict in his duty if he did not first attempt to acquaint himself with the history of this case which would mean, at the very least, a review of the voluminous record, to say nothing, of any independent investigation he might feel compelled to make. As the Law Guardian suggests, "such a course would be to substitute ignorance in the place of informed opinion, under the guise of neutrality”. There is simply no need for such action here.
In his affidavit in support of this motion counsel for the *845 respondents correctly points out that there has been an almost unbroken line of Supreme Court decisions favoring the integrity of the family unit, which is endowed with constitutional protection from unreasonable invasion, citing Stanley v Illinois (405 US 645), Meyer v Nebraska (262 US 390), Pierce v Society of Sisters (268 US 510), Wisconsin v Yoder (406 US 205), May v Anderson (345 US 528), and Glona v American Guar. & Liab. Ins. Co. (391 US 73). And recently in Smith v Organization of Foster Families (431 US 816, 847), the Supreme Court unequivocally stated that whatever "liberty” interest might exist in the foster family, "[T]hat interest must be substantially attenuated where the proposed removal from the foster family is to return the child to his natural parents”.
Likewise, counsel points out that New York State courts have not failed to mention the primacy of the rights of natural parents, when challeged by the State or third parties, citing People ex rel. Kropp v Shepsky (305 NY 465), People ex rel. Portnoy v Strasser (303 NY 539) and the recent Court of Appeals decision in Matter of Bennett v Jeffreys (40 NY2d 543, 552) wherein the court said that "Neither law, nor policy, nor the tenets of our society would allow a child to be separated by officials of the State from its parent unless the circumstances are compelling.” (See, also, Matter of "Y” v "Y”, 62 AD2d 426.)
The doctrine firmly established by such high authority is, of course, the very reason why the commissioner’s application for an extension of the placement of these children in foster care may not be granted without affording the parents a full opportunity to be heard in opposition to such request (Family Ct Act, § 1055, subd [b], par [ii]) and to be represented thereat by counsel (Family Ct Act, § 262, subd [a], par [i]). Such a hearing will be afforded them. Although the Law Guardian may, on the basis of the record, already have formed an opinion and taken a partisan position with respect to the proper disposition of the application, the court has not. The court, not the Law Guardian, has, subject of course to appellate review, the ultimate power and responsibility of decision. That decision will be reserved until a hearing can be had and all the evidence on both sides is in.
The motion for an order dismissing the Law Guardian is denied. The Law Guardian is requested to continue with his assignment.