■ In the Matter of CATHERINE CARBALLEIRA, Appellant, v LOREN SHUMWAY, Respondent. [710 NYS2d 149] —Rose, J. Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered April 27, 1999, which, *inter alia,* dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior custody order.

The parties to this proceeding were married in 1986 and are the parents of one child, a son, born in 1987. After marital difficulties arose, the parties separated in 1990 and, following a lengthy and vigorously contested trial, were divorced in 1995.

The judgment of divorce granted the parties joint custody of their son with equally shared physical custody. Thereafter respondent remarried and the parties' animosity steadily increased until petitioner commenced this proceeding in March 1997 seeking sole custody of the child. After appointing a Law Guardian and conducting pretrial proceedings, Family Court conducted an evidentiary hearing spanning 10 days over the period from October 1997 to June 1998. During the course of the hearing, respondent also requested an award of sole custody. In a well-reasoned decision, Family Court determined that continuation of joint custody was inappropriate because the parties could not cooperate in raising their son, and it awarded sole custody and decision-making authority to respondent. It also granted petitioner visitation and a consulting role in major educational and medical decisions concerning the child. Petitioner now appeals.

For purposes of this appeal, petitioner does not dispute that Family Court properly determined that joint custody was inappropriate due to the acrimonious relationship between the parties (*see, Braiman v Braiman*, 44 NY2d 584, 589-590). Nor does petitioner directly contest the merits of Family Court's determination based on the record before it. Rather, petitioner contends that Family Court's decision should be reversed and a new hearing held because the Law Guardian failed to adequately represent the parties' child during the proceeding. Specifically, petitioner alleges that the Law Guardian's conduct was improper because he advocated a position contrary to the expressed wishes of his client, held a bias against petitioner, revealed his client's confidences to third parties and failed to call an essential witness, respondent's wife.

As they are directed solely to the Law Guardian's representation, petitioner's arguments require us to consider the proper role of a Law Guardian in a custody proceeding. While conceding that a Law Guardian would be justified in substituting his or her own judgment of what is in the best interest of a very young child, petitioner contends that where, as here, the represented child is old enough to articulate his or her wishes, the Law Guardian is required to advocate for the result desired by the child and prohibited from interjecting an independent view of what would best meet the child's needs. We cannot agree with such a categorical position and, instead, affirm Family Court based on the circumstances of this case.

The Family Court Act "establishes a system of law guardians for minors who often require the assistance of counsel to help protect their interests *and* to help them express their

wishes to the court" (Family Ct Act § 241 [emphasis supplied]). First and foremost, the Law Guardian is the attorney for the child (Family Ct Act § 242; *see, Matter of Jamie EE.*, 249 AD2d 603) and must take an active role in the proceedings (*see, id.,* at 605-606; *Matter of Jamie TT.*, 191 AD2d 132, 137-138). In that role as attorney, the Law Guardian has the statutorily directed responsibility to represent the child's wishes as well as to advocate the child's best interest. Because the result desired by the child and the result that is in the child's best interest may diverge, Law Guardians sometimes face a conflict in such advocacy (*see, Marquez v Presbyterian Hosp.*, 159 Misc 2d 617, 620-621; *Matter of Scott L. v Bruce N.*, 134 Misc 2d 240, 243-245; Guggenheim, *A Paradigm for Determining the Role of Counsel for Children*, 64 Fordham L Rev 1399 [1996]; Isaacs, *The Role of the Lawyer in Representing Minors in the New Family Court*, 12 Buff L Rev 501, 506-507 [1963]).

It is helpful to a resolution of that conflict to note that the child's preference is just one factor the trial court will consider (*see, Eschbach v Eschbach*, 56 NY2d 167, 173). "While not determinative, the child's expressed preference is some indication of what is in the child's best interests. Of course, in weighing this factor, the court must consider the age and maturity of the child and the potential for influence having been exerted on the child" (*id.,* at 173). Depending on the circumstances, "a Law Guardian may properly attempt to persuade the court to adopt a position which, in the Law Guardian's independent judgment, would best promote the child's interest, even if that position is contrary to the wishes of the child" (*Matter of Amkia P.*, 179 Misc 2d 387, 390; *see, Matter of Dewey S.*, 175 AD2d 920, 921).

Here, the Law Guardian took an active role by introducing evidence, presenting a witness, cross-examining all other witnesses, participating in the *Lincoln* hearing and submitting a closing argument (*see, Matter of Burr v Emmett*, 249 AD2d 614, 616). Also, despite the Law Guardian's advocacy that custody be awarded to respondent, the consistent strong preference of the parties' child to live with his mother was acknowledged by the Law Guardian and repeatedly communicated to Family Court. In evaluating the Law Guardian's advocacy of a disposition at odds with the child's preference, we note that the child had his 11th birthday during the course of the hearing. Significantly, petitioner testified that the child suffers from several neurological disorders including Tourettes Syndrome, Obsessive-Compulsive Disorder and Attention Deficit Hyperactivity Disorder. The "neutral" psychologist ap-

pointed by Family Court opined that the child was certainly intelligent but somewhat less mature than average and could be easily manipulated by adults. The record further indicates that the child may be blinded by his love for petitioner, that she exerts influence on his thoughts concerning custody, and that he did not articulate objective reasons for his preference other than his dislike of discipline at respondent's home and the lack of rules and discipline at petitioner's home (see, Matter of Amkia P., supra, at 388). Under these circumstances, we find that the Law Guardian did not act improperly by advocating a position that he believed to be in his client's best interest.

Petitioner also complains that the Law Guardian was impermissibly biased against her. A Law Guardian should not have a particular position or decision in mind at the outset of the case before the gathering of evidence (see, Matter of Apel, 96 Misc 2d 839, 842-843). On the other hand, "Law Guardians are not neutral automatons. After an appropriate inquiry, it is entirely appropriate, indeed expected, that a Law Guardian form an opinion about what action, if any, would be in a child's best interest" (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 241, at 218-219).

Here, in responding to a request for his removal made by petitioner on the ninth day of the hearing, the Law Guardian stated: "And yes, I am biased in this thing. And I think it's no secret, here, that as the case has progressed, I have become biased in favor of one of the parents, because I believe my client's best interests are best served there." The use of the inflammatory term "bias" was inopportune, as it implied a personal and unreasoned prejudging of the issues. Rather, the record shows that the Law Guardian intended to communicate that after being exposed to the evidence, he had formed a professional opinion concerning the proper disposition of custody and thus had a preference for respondent. There was no evidence that the Law Guardian held any personal prejudice against petitioner. Also, a considered opinion as to the best interest of the child seems a natural result by this stage of the proceeding (see, Matter of Apel, supra, at 843). As the Law Guardian had not met respondent before the trial and formulated his opinion of both parties only in the course of the hearing, we find no evidence of an actual bias against petitioner. Thus, Family Court properly refused to remove the Law Guardian when petitioner applied for such relief.

Nor did the Law Guardian's actions constitute an improper disclosure of a client confidence. Law Guardians have an attorney-client relationship with their wards (see, Matter of

*Angelina AA.*, 211 AD2d 951, 953, *lv denied* 85 NY2d 808; *Matter of Bentley v Bentley*, 86 AD2d 926, 927) and generally may not reveal confidences of the client concerning the representation (*see*, Code of Professional Responsibility DR 4-101 [b] [22 NYCRR 1200.19 (b)]). However, clients, even child clients, may consent to the revelation of confidences by the attorney (*see*, Code of Professional Responsibility DR 4-101 [c] [1] [22 NYCRR 1200.19 (c) (1)]; *Matter of Angelina AA.*, *supra*, at 953). Here, the child consented to the Law Guardian telling respondent about a suicide threat made by the child. Therefore, the Law Guardian did not breach a client confidence or violate any ethical rule.

Finally, petitioner challenges the effectiveness of the Law Guardian's representation for his failure to call respondent's wife as a witness. Having alleged that respondent yielded much of the care and discipline of the parties' child to his wife, petitioner characterizes the wife as the likely primary caregiver of the child if respondent was awarded sole custody and contends that it was absolutely essential that her relationship with the child be examined at the hearing. This contention is also without merit.

If petitioner believed respondent's wife to be a necessary witness, petitioner should have called her to testify. While it is likely that petitioner would not have been permitted to impeach her own witness (*see*, Prince, Richardson on Evidence § 6-419 *et seq.* [Farrell 11th ed]), she could have requested Family Court to allow her to treat respondent's wife as a hostile witness (*see*, Prince, Richardson on Evidence § 6-228 [Farrell 11th ed]). Regardless of how Family Court might have ruled, petitioner's failure to take any steps to present the testimony of respondent's wife precludes the present claim of prejudice flowing from the Law Guardian's failure to do so. Accordingly, the Law Guardian breached no professional duty in failing to call her as a witness.

We have considered petitioner's remaining contentions and find them to be without merit.

Crew III, J. P., Graffeo, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.