■ In the Matter of JAMES MM., Respondent, v JUNE OO., Appellant. (Proceeding No. 1.) In the Matter of JAMES NN., et al., Children Alleged to be Neglected. D. ALAN WRIGLEY, as Law Guardian, Respondent; JUNE OO., Appellant. (Proceeding No. 2.) [740 NYS2d 730] —Mercure, J.P. Appeals (1) from an order of the Family Court of Columbia County (Czajka, J.), entered December 15, 2000, which, inter alia, granted petitioner's application, in proceeding No. 1 pursuant to Family Court Act article 6, for modification of a prior order of custody, and (2) from an order of said court, entered February 28, 2001, which granted petitioner's application, in proceeding No. 2 pursuant to Family Court Act article 10, to adjudicate respondent's children to be neglected and placed respondent under an order of supervision.

Respondent (hereinafter the mother) and petitioner James MM. (hereinafter the father) were divorced in 1996. They were awarded joint legal custody of their minor children, James NN. (born in 1988) and Betsy NN. (born in 1989), with physical custody to the mother. In December 1999, the father filed a petition (proceeding No. 1) alleging the mother's violation of a court order concerning visitation; he subsequently amended the petition to allege the mother's further violation of an order by allowing her paramour to reside with her and the children, thereby exposing the children to domestic violence committed by the paramour.

During the course of that proceeding, the children's Law Guardian became concerned about ongoing domestic violence in the mother's home. In March 2000, the Law Guardian filed a child neglect petition (proceeding No. 2) against the mother pursuant to Family Court Act § 1032, and the father filed a second amended petition, this time seeking sole custody of the children. The mother thereafter petitioned for sole custody of the children and, in May 2000, filed a violation petition against the father, alleging that he violated a court order by allowing their son to have contact with the mother's former paramour.

Following a fact-finding hearing at which Family Court heard testimony from the father and the mother, the children's therapist, the children's teachers, and a friend of the mother, the court found that the mother had neglected the children. It subsequently held a dispositional hearing, during which the Law Guardian noted that the children preferred to stay with their mother but, nonetheless, recommended that the father be awarded sole custody of the children. In December 2000, the court awarded the father sole custody of the children, awarded the mother regular visitation with the children, and dismissed the pending violation petitions. In February 2001, the court rendered an order of fact finding and disposition adjudicating the children to have been neglected by the mother and placing the mother under the supervision of the Columbia County Department of Social Services for one year. The mother appeals both orders.

We affirm. Initially, we reject the contention that the evidence adduced at the fact-finding hearing failed to support Family Court's findings that the mother neglected the children by exposing them to domestic violence and by denigrating the father in the children's presence. Pursuant to Family Court Act § 1012 (f) (i) (B), a child will be deemed to be neglected if the child's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a

result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care" by failing to, among other things, provide proper supervision or guardianship necessary to ensure that the child is not harmed or at substantial risk of being harmed (*see, Matter of Larenzo SS.*, 289 AD2d 880, 881; *Matter of Ember R.*, 285 AD2d 757, 758, *lv denied* 97 NY2d 604).

It is well settled that a child's exposure to domestic violence in the home may form the basis for a finding of neglect (*see, Matter of Larenzo SS.*, *supra* at 882; *Matter of Kathleen GG. v Kenneth II.*, 254 AD2d 538, 540). Here, the mother acknowledged that she had been the victim of physical abuse by her former paramour on several occasions. Significantly, she also admitted that the children were aware of the domestic violence, that they had reason to be afraid of the paramour and that she had jeopardized the children's welfare by allowing her paramour to repeatedly return to her home. Family Court specifically credited the testimony of the children's therapist, who indicated that the children had reported other instances of abuse, and the record reflects that the mother did not take action to remove her former paramour from the children's lives until December 1999. The evidence also supported Family Court's further finding that the mother continued to lack awareness of the impact of the domestic violence on her children.

In *Matter of Catherine KK.* (280 AD2d 732), this Court found that a child was neglected due, in part, to the father's use of "profanity and derogatory language when speaking to the mother during visitation exchanges" (*id.* at 735). In this case, Family Court specifically credited the therapist's testimony that she had witnessed the mother's denigration of the father in the children's presence, which continued despite the therapist's instructions to the contrary. We therefore conclude that Family Court did not err in its finding that the mother neglected the children by denigrating their father in their presence.

The mother's additional contentions do not warrant extended discussion. Based on Family Court's finding of neglect against the mother and its additional findings that there was a danger of further neglect because of the mother's failure to appreciate "the extent of emotional harm" that the children suffered due to her conduct and that the mother is unable to distinguish between her own interests and those of the children, all of which were supported by the evidence, there was a sufficient basis for the award of sole custody to the father (*see, Matter of Kathleen*

*GG. v Kenneth II.*, *supra* at 540). Finally, we are not persuaded that the Law Guardian breached his fiduciary duty to the children by prosecuting the instant neglect petition or by advocating a position contrary to the children's wishes. It is well settled that a "Law Guardian has [a] statutorily directed responsibility to represent [a] child's wishes as well as to advocate the child's best interest" (*Matter of Carballeira v Shumway*, 273 AD2d 753, 755, *lv denied* 95 NY2d 764; *see*, Family Ct Act § 241), and, in cases where there is a conflict between the two, the Law Guardian may advocate for the disposition that, in his or her judgment, promotes the child's best interest (*see*, *Matter of Carballeira v Shumway*, *supra* at 755-756 [Law Guardian did not act improperly in making recommendations contrary to the wishes of an 11-year-old child who suffered from several neurological disorders and could easily be manipulated]; *Matter of Dewey S.*, 175 AD2d 920, 921). Contrary to the mother's contention, the distinction between the facts underlying *Matter of Carballeira v Shumway* (*supra*) and the present case by no means requires dissimilar results.

The mother's additional contentions, including her claim of bias on the part of Family Court, have been considered and found to be unavailing.

Crew III, Peters, Spain and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.