■ In the Matter of NICOLE VV. and Others, Children Alleged to be Abused and Neglected. WARREN COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner; GRACE VV., Appellant. JOHN Z., Respondent. [746 NYS2d 53] —Spain, J. Appeal from an order of the Family Court of Warren County (Austin, J.), entered October 3, 2000, which, in a proceeding pursuant to Family Court Act articles 6 and 10, inter alia, granted a cross motion by John Z. for modification of a prior order of custody.

The subject of this matter is Jon Z. (born in 1994), the biological child of John Z. (hereinafter the father) and respondent (hereinafter the mother). In March 1996, the parties agreed, inter alia, to joint legal custody of Jon with physical custody to the mother and visitation by the father; Family Court issued a detailed order incorporating the terms of their agreement (hereinafter the original custody/visitation order).

On September 20, 1996, petitioner commenced a proceeding pursuant to Family Court Act article 10 alleging that Jon and three of his half-siblings by his mother were abused and ne-

glected by the mother. A removal hearing—pursuant to Family Court Act § 1027—was held on the day the petition was filed. At the close of the hearing, Family Court ordered that all four of the children be temporarily removed from the mother's home and placed in the custody of petitioner with the authority to release them to the custody of their biological fathers. Before the end of that day, petitioner released Jon to the custody of the father. Family Court also issued a temporary order of protection which provided the mother with supervised visitation with the children, including Jon, to be arranged by petitioner. On July 2, 1997, following the mother's in-court general admission to neglecting each of the children, Family Court issued a fact-finding and dispositional order, on consent (hereinafter the dispositional order), discharging Jon to the custody of the father, and also issued a one-year order of protection providing for continuing supervised visitation between each of the four children and the mother "pending a determination by a mental health professional." The mother did not appeal from these orders.

Shortly thereafter, the Law Guardian requested a hearing regarding possible violations of the visitation order because the father—apparently on the advice of the child's physician and psychotherapist—had been denying the mother her ordered supervised visitation. On September 18, 1997, a hearing was commenced by Family Court to address the mother's visitation with Jon.[1] On December 3, 1997, in the midst of the hearing, petitioner filed a violation petition against the mother alleging that she had engaged in unsupervised contact with Jon's half-siblings in violation of the dispositional order. Over the mother's objection, Family Court decided to resolve the violation petition and a subsequent violation petition along with the visitation matter, and proceeded to receive proof on these matters concurrently. On February 26, 1998, while the hearing was ongoing, the mother's "rights of contact" with Jon were temporarily suspended.

In March 1998, the mother moved for, inter alia, enforcement of that portion of the original custody/visitation order which had granted her joint legal custody of Jon. Notably, the mother's application did not seek to disturb that part of the dispositional order granting custody of the child to the father, nor did she seek visitation; instead, her motion sought "full ac-

---

1. There is no evidence in the record that any petition was filed alleging a violation of the dispositional order by the father or seeking a suspension of the mother's visitation with Jon. It appears that Family Court, sua sponte, summoned the parties before the court.

cess" to all records and reports concerning Jon, as well as access to the child's service providers, caregivers and teachers. The father opposed the motion and cross-moved to modify the original custody/visitation order and the dispositional order, alleging a change in circumstances and seeking, inter alia, sole custody and an order of protection barring the mother from, inter alia, having any contact with Jon or his care providers.[2] Shortly thereafter, the court issued a further order granting the father temporary sole legal custody of Jon.

In May 1998, the violation petitions were resolved upon admission by the mother to a willful violation for which she was sentenced to a suspended 30-day jail sentence. The hearing with respect to visitation and access, which had been combined with the mother's and father's cross motions regarding custody, continued until May 2000, when Family Court issued a scheduling order setting May 17, 2000 as the final date for submission of proof. Over the objection of the mother, all proof was closed on that date. Upon application of the father and without objection, Family Court took judicial notice of all testimony and exhibits received during all prior and related proceedings involving either the father or the mother. By decision and order entered October 3, 2000, Family Court found, inter alia, that the mother had abused and neglected her children for a long period of time and that it was in Jon's best interest to be in the custody of his father, granted the father's request for sole custody and barred the mother from having any contact with Jon or any of his care providers. The court simultaneously issued an order of protection directing that the no contact provision imposed on the mother remain in effect until Jon—who at the time of this order was six years of age—is 18 years of age. The mother now appeals.

Initially, the parties disagree as to whether this proceeding is a custody/visitation dispute governed by the evidentiary rules under Family Court Act article 6, or a modification of a Family Court Act article 10 dispositional order and, therefore, governed by the evidentiary rules set forth in article 10. The record demonstrates that the proceeding which led to the order from which the mother has now appealed began—apparently on Family Court's own motion—on September 18, 1997, as an inquiry into whether the father was justified in denying the visitation provided to the mother in the dispositional order.

---

**2.** In February 1999, the father moved for an order directing, inter alia, petitioner and/or the Law Guardian to institute proceedings to terminate the mother's parental rights to Jon. Family Court's ultimate denial of that motion has not been appealed.

However, as of March 1998, upon the filing of the mother's motion seeking joint custody and the father's cross motion—under "article 4, 6 and 10 Family Court Act" alleging a change in circumstances—seeking sole custody and a permanent order barring the mother from any contact with the child, the parties necessarily sought to modify the existing custody arrangement. Although not fully recognized here by Family Court, the article 10 dispositional order issued in July 1997 was a final order granting custody to the father and was never appealed. Moreover, there is no order in the record extending the dispositional one-year order of protection which provided the mother supervised visitation with Jon. Accordingly, we conclude that, because both parties sought to change an existing custody arrangement, the standards of proof required under Family Court Act article 6 should be utilized in our review, even though custody in the father arose out of an article 10 proceeding.

Modification of an existing custody order is warranted "only upon a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903, 903; *see, Matter of Thompson v Thompson*, 267 AD2d 516, 517; *Matter of Russo v Russo*, 257 AD2d 926, 927). Notably, while Family Court never expressly found a change in circumstances, "this Court may make such a finding based on our independent evaluation of the record before us" (*Matter of Bishop v Livingston*, 296 AD2d 602, 603 [decided herewith]; *see, Matter of Bennett v Davis*, 277 AD2d 517, 518). Recognizing "Family Court's unique opportunity to assess the credibility of the witnesses and observe their demeanor" (*Matter of Hardy v Short*, 244 AD2d 669, 670), we generally accord great deference to its factual findings, which will only be disturbed if they lack a sound and substantial basis in the record (*see, Matter of Russo v Russo, supra* at 927). Significantly, "[t]he denial of visitation to a noncustodial parent is a drastic remedy which may be ordered only in the presence of compelling reasons and substantial evidence that such visitations are detrimental to the child's welfare" (*Matter of McCauliffe v Peace*, 176 AD2d 382, 383-384; *see, Matter of Rogowski v Rogowski*, 251 AD2d 827; *Matter of Rhynes v Rhynes*, 242 AD2d 943). Taken in its totality, the evidence in the record before us is more than sufficient to uphold Family Court's orders.

Here, the record fully supports Family Court's continuation of sole custody of Jon in the father. First, the mother admitted to neglecting her children and to violating the court's July 1997 dispositional order relating to her supervised visitation

with Jon's half-siblings; second, the record fully supports Family Court's conclusion that the mother had neglected and abused her children for a long period which predates the termination of her parental rights with respect to her oldest daughter in 1991 (*see, Matter of Rita VV.*, 209 AD2d 866, *lv denied* 85 NY2d 811) and which neglect and abuse, according to testimony, continued up to and during the trial. Numerous witnesses testified at the removal hearing (Family Ct Act § 1027) and throughout the remainder of the trial to statements made to them by Jon's half-siblings describing the mother's abusive conduct. These statements were properly admitted under Family Court Act article 6 standards as out-of-court statements of children (*see, Matter of Pratt v Wood*, 210 AD2d 741, 742; Family Ct Act § 1046 [a] [v]) and were amply corroborated by witnesses who spoke with and observed the children's behavior and injuries, as well as by others, including the father, who had observed the mother's abusive and neglectful behavior toward her children, witnesses whose testimony Family Court credited over that of the mother.

There is also ample support in the record for Family Court's denial of visitation to the mother. In addition to evidence of the mother's abusive behavior and lack of parental insight while the children were in her care, the record reflects that Jon made remarkable strides in his behavior and his emotional condition when removed from his mother's care. Moreover, there was substantial and compelling evidence from the reports and testimony of medical and mental health professionals, some of whom opined that visitation by the mother with Jon would be detrimental to his physical and emotional well-being. One of the professionals, the court-appointed psychologist—who met with the parents, Jon and his half-siblings and who filed two reports with the court—testified that Jon was significantly affected by witnessing the abuse of his half-siblings and that, only after being removed from his mother's care, was he developing into an emotionally healthy child. The psychologist further opined that, as of the time of the trial, the child was not bonded with the mother, his development while in the care of the father was exceptional and contact with the mother would not be beneficial because the child's development was so fragile. The expert also stated that the mother's recent completion of several parenting, stress prevention and first aid programs was no guarantee of a change in her behavior toward her children, especially where there was evidence that she had recently assaulted one of her daughters. In our view, the evidence in the record compellingly supports the conclusion that contact with the mother at this time in his life would be

detrimental to Jon's welfare. We recognize, however, that despite the lengthy term of the order of protection, the mother, as a parent whose parental rights have not been terminated, retains the right to pursue visitation based upon a sufficient change in circumstances, provided she can establish a real need which will insure the child's best interest (*see, e.g., Matter of Watts v Watts*, 290 AD2d 822, *lv denied* 97 NY2d 614; *see also, Matter of Van Hosen v Van Hosen*, 186 AD2d 903, *supra*).

Although the error is harmless, we do find merit in the mother's contention that Family Court improperly permitted petitioner's caseworker to testify from a summary which she made from petitioner's records regarding the contents of more than 25 indicated hotline reports made against the mother to the State Central Register. Again, following the rules of evidence applicable to Family Court Art article 6 proceedings, no foundation was laid as required in Family Court Act § 651-a for the admissibility of indicated State Central Register reports in a custody case. In describing the hotline reports, the caseworker appears to have simply characterized in summary form what had been reported to petitioner by the State Central Register. Thus, her testimony was hearsay (*see, People v Cratsley*, 86 NY2d 81, 87-88) and neither her testimony nor her written summary was admissible under the business records exception to the hearsay rule, which requires the evidence seeking to be admitted to be a "writing or record" made in the regular course of business, contemporaneously with the transaction, occurrence or event described therein (*see*, CPLR 4518). Although the caseworker testified that petitioner maintained in its office printed copies of the indicated reports which it received in the ordinary course of its business—documents which may themselves qualify as business records (*see, People v Cratsley, supra* at 90-91)—the indicated reports themselves were not introduced into evidence. In the absence of those documents, the caseworker's testimony about their contents remained inadmissible hearsay (*see, Matter of Steven DD.*, 243 AD2d 890, 891). Although Family Court improperly relied on this evidence in making its decision, the error, in our view, was harmless given the quantum of other proof of abuse and neglect in the record.

Next, we reject the mother's contention that the Law Guardian was impermissibly biased against her. Initially, the mother's claim is unpreserved for review because she did not bring a motion to remove the Law Guardian at the trial level. Turning to the merits, this Court has stated that "[f]irst and foremost, the Law Guardian is the attorney for the child * * *

and must take an active role in the proceedings" (*Matter of Carballeira v Shumway*, 273 AD2d 753, 755, *lv denied* 95 NY2d 764 [citations omitted]). Although "[a] Law Guardian should not have a particular position or decision in mind at the outset of the case before the gathering of evidence * * * 'Law Guardians are not neutral automatons [and,] [a]fter an appropriate inquiry, it is entirely appropriate, indeed expected, that a Law Guardian form an opinion about what action, if any, would be in a child's best interest'" (*id.* at 756, quoting Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 241, at 218-219 [citation omitted]).

A review of the Law Guardian's letters, affidavits and other submissions makes it clear that his ultimately highly unfavorable characterizations of the mother were not the product of personal bias unconnected with the facts of the case, but evolved over time in response to what the Law Guardian perceived as proof of the mother's abuse of her children—his clients—including Jon. Although sometimes emphatically expressed and generally negative, the Law Guardian's observations about the mother did not reflect a "personal and unreasoned prejudging of the issues" (*Matter of Carballeira v Shumway, supra* at 756) but, rather, a professional judgment about the mother's character and fitness as a parent based on proof of her conduct.

We have considered each of the mother's remaining contentions, including Family Court's denial of her motions seeking the recusal of the Trial Judge and its discretionary decision to bring the proceedings quickly to a close after more than two years of testimony, and find they lack merit.

Cardona, P.J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.