Matter of Debra YY. v Michael XX. (2025 NY Slip Op 00003)

Matter of Debra YY. v Michael XX.

2025 NY Slip Op 00003

Decided on January 2, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 2, 2025

536171
[*1]In the Matter of Debra YY., Respondent,
v
Michael XX., Appellant.

Calendar Date:November 15, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, Fisher and Powers, JJ.

Copps DiPaola Silverman, PLLC, Albany (Joseph R. Williams of counsel), for appellant.
Kathryn S. Dell, Troy, for respondent.
Sharon Lee McNulty, Albany, attorney for the child.

Powers, J.
Appeals from an order and an amended order of the Family Court of Albany County (Susan M. Kushner, J.), entered August 19, 2022 and September 19, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to, among other things, modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2014). Pursuant to a November 2019 order on consent, the parties shared joint legal custody of the child with the father having ultimate decision-making authority. The prior order granted the father primary physical custody of the child with the mother having parenting time every other weekend from Friday evening through Sunday evening and every Wednesday night to Thursday morning. In September 2020, the mother filed an order to show cause seeking to find that the father had violated the terms of the prior order and to modify that order to grant her sole custody of the child.[FN1] In response, the father moved to dismiss the petition and requested the imposition of counsel fees, both of which were denied. Ultimately, following fact-finding and Lincoln hearings, as well as certain temporary orders modifying custody, Family Court found that the mother had demonstrated a change in circumstances as the parties were unable to effectively coparent and that modification of the prior custody order was in the child's best interests. Thus, the court issued a custody determination in August 2022 granting the mother final decision-making authority and primary physical custody of the child. This order also set forth a detailed schedule of the father's parenting time. The court then, in September 2022, issued an amended order which, in addition to the foregoing, addressed the father's request for counsel fees. The court denied the father's request, indicating that the mother's petition had not been completely without merit so as to warrant the imposition of counsel fees. The father appeals.[FN2]
The father claims that Family Court erred in finding that the mother had established a change in circumstances since entry of the prior order. It is well settled that "[a] parent seeking to modify an existing custody and parenting time order first must demonstrate that a change in circumstances has occurred since the entry thereof to warrant the court undertaking a best interests analysis" (Matter of Jacob L. v Heather L., 228 AD3d 1191, 1192 [3d Dept 2024] [internal quotation marks and citations omitted]). Initially, the November 2019 order was entered on the consent of the parties and is, therefore, entitled to less weight (see Matter of Daniel C. v Joanne C., 182 AD3d 711, 713 n 5 [3d Dept 2020]). Nevertheless, the record is replete with situations highlighting the parties' inability to coparent. For example, the parties' failure to come to a consensus on certain healthcare decisions, as well as what school to enroll the child in and signing the child up for [*2]two separate tee-ball leagues — one in each parent's respective community — leading to the child being unable to participate fully in either league. Moreover, both the mother and the father testified as to their inability to communicate effectively. A change in circumstances "may be established by evidence that the relationship between the parents has deteriorated to the point where they simply cannot work together in a cooperative fashion for the good of their child[ ]" (Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1413 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Virginia OO. v Alan PP., 214 AD3d 1045, 1046-1047 [3d Dept 2023]). Thus, the court's determination that a change in circumstances had occurred since entry of the prior order is supported by a sound and substantial basis in the record.
Accordingly, we turn to the issue of what custodial arrangement would be in the best interests of the subject child. When undertaking such review, Family Court must consider "a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Marina C. v Dario D., 228 AD3d 1016, 1017 [3d Dept 2024] [internal quotation marks and citations omitted]; lv denied ___NY3d___ [Dec. 12, 2024]; see Matter of Ronald R. v Natasha FF., 217 AD3d 1163, 1164 [3d Dept 2023]). "Given the superior position of Family Court to observe and evaluate the testimony, great deference is accorded to its credibility assessments and factual findings, and we will not disturb its custody determination so long as it is supported by a sound and substantial basis in the record" (Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [3d Dept 2017] [citations omitted]).
The mother testified that when she attempted to discuss with the father what school the child should be enrolled in, he informed her that he had already enrolled the child in the district where he resided, emphasizing their strained relationship. The mother explained her observations of the child during exchanges and the emotional impact to the child. Specifically, the child becomes upset, sad, withdrawn, aggressive and angry when she brings the child to the father's home. The child also often cries and has had other physical manifestations of this stress. The child tries to avoid going to the father's home by gripping his car seat or seatbelt and refusing to get out of the vehicle. On the other hand, when the mother picks up the child for her own parenting time, he is excited and happy.[FN3] Though the mother verified that she was indicated by the Albany County Department for Children, Youth and Families in 2019, she claimed she could not recall the details of this, and [*3]further information was not elucidated on the record.[FN4]
The father testified that the child appears "a little sad" from time to time after exchanges and, therefore, he gives the child time and space to be alone and calm down. The father denied ever observing the child trembling or vomiting as a result of being upset from missing the mother. Despite conceding that the child does have separation anxiety, the father claimed that it is not as severe as others say and that it has improved as the child has grown older. The father generally described the child as happy. He further explained that he enrolled the child in his local school district without any discussion with the mother because, as the child's primary physical custodian, he believed the child was required to attend school in the district where he resided. Additionally, although he and the mother disagreed as to where the child should attend school, he had final decision-making authority and believed his district was the best choice for the child. The child does not cry when dropped off for school by the father, however, the father did note that the child does cry when dropped off by the mother.
The child's mental health counselor, Kathleen Mullaney, was qualified as an expert and testified that the child has been diagnosed with generalized anxiety disorder, separation anxiety and an adjustment disorder with disturbance of emotion and conduct. Mullaney explained that separation from the mother is a stressor that causes the child's conduct issues, and that, although the child has acceptable language skills, he regresses when anxious. Based on her conversations with the parents and in her counseling of the child, Mullaney attested that the child's behaviors are improving and that she would expect continued improvement with treatment. However, the child continues to struggle with separation anxiety and has seen the least improvement in this area. Mullaney does not believe that the actions of either parent contribute to the child's separation anxiety, that the child is being influenced by either parent or that there is parental alienation occurring. In Mullaney's view, the current custody agreement is difficult for the child because he constantly worries about when he will see the mother again. In a similar vein, the difference in each parent's respective parenting style is problematic as the child thrives under a nurturing environment, like the mother provides.
First addressing the father's claim that the mother is unfit to serve as custodial parent, we acknowledge, as Family Court did, that her past actions appear to have detrimentally impacted the father's relationship with the child. However, there is no indication in the record that the mother has acted in a manner injurious to the father's relationship with the child since entry of the prior order, and, relatedly, the father testified that his relationship with the child has since improved. Thus, considering that it appears the mother has [*4]cured these past behaviors, and deferring to the court's factual findings in this respect, we do not find that the mother is unfit to act as custodial parent (compare Matter of James EE. v Vanessa EE., 228 AD3d 1025, 1027 [3d Dept 2024]; Matter of Greene v Robarge, 104 AD3d 1073, 1077 [3d Dept 2013]). The father's related contention that the court overlooked the mother's past actions is belied by the record. The court expressed explicit concern that the mother would not promote the child's relationship with the father and addressed this concern appropriately by setting forth a specific and expansive parenting time schedule for the father. The record reveals, among other things, that the child struggles with generalized anxiety, as well as separation anxiety that is worsened by extended time away from the mother, and that the father's parenting style is not conducive to combating the child's stressors. Based upon the record as a whole, with import given to the child's emotional and mental well-being, we find a sound and substantial basis in the record to support the court's determination that the mother is the more suitable custodian for the child. Therefore, modification of the custody arrangement to grant the mother final decision-making authority and primary physical custody of the child with the father having significant parenting time was in the best interests of the child (see Matter of Alicia SS. v Andrew RR., 224 AD3d 1207, 1211 [3d Dept 2024]; Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1160 [3d Dept 2022], lv denied 39 NY3d 901 [2022]; Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [3d Dept 2018]). Although not determinative, this conclusion is consistent with the position advanced by the attorney for the child both at the hearing and on appeal (see Matter of Daniel TT. v Diana TT., 127 AD3d 1514, 1516 n [3d Dept 2015]).
Finally, as to the denial of the father's request for counsel fees, we find that Family Court utilized the incorrect standard when determining this issue. Counsel fees may be awarded to a parent seeking to modify or enforce a custody order "as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties" (Domestic Relations Law § 237 [b]; see Victoria M. v Christopher L., 232 AD3d 1098, ___, 220 NYS3d 512, 513 [3d Dept 2024]). Despite having utilized this correct standard when denying the father's request as premature, the court later erroneously determined the issue based on whether sanctions were warranted. Even so, we may independently address the issue as our "discretionary authority is as broad as the trial court's" (O'Brien v O'Brien, 66 NY2d 576, 590 [1985]; accord Lisowski v Lisowski, 218 AD3d 1214, 1221 [4th Dept 2023]; see Cheney v Cheney, 86 AD3d 833, 837 n 4 [3d Dept 2011]). Thus, we find that the father was not entitled to counsel fees.
"[I]n deciding whether to grant an award of counsel fees and in setting the amount of such, [a] court [*5]should consider the totality of the circumstances, including but not limited to the parties' financial circumstances; the relative merit of the parties' positions; the time commitment involved; the complexity and difficulty of the matters; the nature of the services provided; counsel's experience; the results obtained; and the cause and effect of unnecessary delays" (Victoria M. v Christopher L., 232 AD3d at ___, 220 NYS3d at 514). The father's request for counsel fees centered around the purported lack of merit to the mother's allegations, and, as such, he provided scant information as to his own finances. Likewise, his request for a hearing on the issue was limited to determining the appropriate award and not, as would be relevant here, for the purpose of inquiring into the mother's financial circumstances to determine if she should be obligated to pay the father's counsel fees in the first instance. For this reason, although the father's initial request for counsel fees indicated in general terms how much he had expended at that point in the proceeding, he failed to provide proof as to the financial circumstances of the parties or most other relevant considerations. In addition, notwithstanding the dismissal of that aspect of her petition alleging violations of the prior order by the father, the mother was granted her paramount relief in the form of primary physical custody of the child, demonstrating the merit of her position. As such, although Family Court applied the incorrect standard, we independently reach the same conclusion and similarly deny the father's request for counsel fees (see Matter of Catto v Howell, 144 AD3d 1146, 1147 [2d Dept 2016]; see also Kopko v Kopko, 229 AD3d 974, 979-980 [3d Dept 2024]).
Egan Jr., J.P., Pritzker, Lynch and Fisher, JJ., concur.
ORDERED that the appeal from the order entered August 19, 2022 is dismissed, without costs.
ORDERED that the amended order entered September 19, 2022 is affirmed, without costs.

Footnotes

Footnote 1: As Family Court dismissed that aspect of the mother's petition seeking to find the father in violation of the prior order and the mother does not appeal therefrom, that issue is not before this Court.
Footnote 2: The August 2022 order was superseded by the amended order entered in September 2022; as such, the father's appeal from the August 2022 order must be dismissed (see Matter of Brian W. v Mary X., 200 AD3d 1439, 1441 n 1 [3d Dept 2021]).

Footnote 3: These observations of the child's demeanor during exchanges were verified by three additional witnesses during the fact-finding hearing, and one witness clarified that the child's reaction to exchanges has worsened with age.

Footnote 4: We do agree with the father's assertion that Family Court improperly denied admission of the indicated report on the basis that it predated the instant petition. "An indicated child protective services report may be admissible in evidence to the extent that it qualifies as a business record" and, relatedly, is presumptively admissible if certified or authenticated (Matter of Penny K. v Alesha T., 39 AD3d 1232, 1233 [4th Dept 2007]; see CPLR 4518 [c]; Family Ct Act §§ former 651-a; 1046 [v]; see also Matter of Brockington v Alexander, 26 AD3d 884, 885 [4th Dept 2006]; Matter of Nicole VV., 296 AD2d 608, 613 [3d Dept 2002], lv denied 98 NY2d 616 [2002]). The indicated report would therefore be admissible and relevant to the court's best interests analysis as evidence of the mother's past performance as well as her willingness to promote the child's relationship with the father. However, we find this error to be harmless. Although the court did not permit the admission of the report, it did permit limited questioning as to the issue and, more importantly, the report to be read from. In fact, the father's counsel read into the record the basis for the indicated report in the form of a question to the mother and, although she stated that she could not recall all the details, the mother stated that what counsel had said could have been the basis of the report. This, in conjunction with the court's express consideration of the mother's "prior CPS history" in its ultimate custody determination, leads us to conclude that the error was harmless (see generally Matter of Nicole VV., 296 AD2d at 613).