■ In the Matter of DONNA MARIE C., Petitioner, v KUNI C., Appellant, and WILLIAM F. O'HERN, Intervenor-Respondent. [21 NYS3d 49]—

Order, Family Court, New York County (Marva A. Burnett, Ref.), entered on or about December 11, 2014, which, after a hearing, granted the motion of intervenor-respondent, the attorney for the children, directing respondent-appellant father to pay $9,840 as his share of the legal services the attorney for the children provided to the children during the underlying custody proceeding, unanimously affirmed, without costs.

In August 2012, the mother filed a petition in Family Court seeking custody of the parties' children, then ages four and six. Given the serious allegations of parental unfitness by each of the parties, the Family Court referee appointed an attorney for the children, William O'Hern, Esq. In its October 4, 2012 order of appointment, the court directed that each parent pay attorney O'Hern an initial sum of $3,750, against which his hourly fee of $300 would be deducted. The court also ordered, based upon the parties' initial financial disclosures, that the children's legal fees would be paid equally, 50% by the father and 50% by the mother. Although the order of appointment directs the initial sum be paid within 10 days, it does not direct periodic billing.[1]

As the parties' disputes over the children intensified, the court appointed a forensic psychologist to evaluate the family, also at the expense of the parents, allocated 70% to the father, and 30% to the mother. Ongoing motion practice involving the children continued. A particular source of friction was the chil-

1. The form order utilized by the Unified Court System for privately paid "law guardians" (order appointing law guardian [UCS-880]), contains the following decretal language: "ORDERED that no less often than every 60 days from the date of this order of appointment the Law Guardian shall send to counsel for the parties bills for compensation and the reimbursement of disbursements." Family Court used an abbreviated version of this order which did not contain this particular language.

dren's nanny, whom the father wanted to fire. Attorney O'Hern brought a motion restraining him from doing so, given the children's attachment to her. When the mother sought an order of protection against the father, based upon his alleged interference with her visitation, O'Hern opposed that motion and crossmoved for the appointment of a parenting coordinator; he also sought the reapportionment of the children's legal fees. His cross motion was granted, a parenting coordinator was appointed, and the children's legal fees were reapportioned in the same manner as the forensic evaluator's fees (70% father, mother 30%). The father, who was at that time represented by counsel, raised no objections to that cross motion; nor did he complain that he had not received any periodic bills from the children's attorney.

In January 2014, the parties settled their custody dispute by entering into a stipulation of settlement. In March 2014, O'Hern sent the parties an itemized invoice for the 14 month period that he had represented the children. The bill was for a total of 54 hours, at his court-set hourly rate of $300. Applying credits for the payments that each parent had already made, the father's share of the bill was $9,840. He refused to pay and O'Hern moved to enforce payment. After conducting a testimonial hearing, lasting two days, Family Court held that O'Hern was entitled to collect the full amount he billed the father for legal services on the children's behalf.

On appeal, the father, now self-represented, claims that no legal fees are warranted because the attorney for the children was biased against him and otherwise did not comply with billing and other requirements of the Court Rules (22 NYCRR 1400.2).

As the attorney for the children, O'Hern was obligated to "zealously advocate the child[ren]'s position." The fact that he sometimes supported or opposed relief sought by a particular parent is not evidence of bias (22 NYCRR 7.2 [d]; Family Ct Act § 241; *see Matter of Fargnoli v Faber*, 105 AD3d 523, 524 [3d Dept 1984], *appeal dismissed* 65 NY2d 631 [1985]). There is nothing in the record supporting a conclusion that O'Hern had a personal, unreasonable prejudgment of any of the issues affecting his clients which interfered with his representation of them (*see Pedreira v Pedreira*, 34 AD3d 225 [1st Dept 2006]; *Matter of Carballeira v Shumway*, 273 AD2d 753, 756 [3d Dept 2000], *lv denied* 95 NY2d 764 [2000]). Clearly, the court had the authority to appoint an Attorney for the Children and to require the parents to pay the fees (*Stefaniak v NFN Zulkharnain*, 119 AD3d 1418 [4th Dept 2014]; *Matter of Plovnick v*

*Klinger*, 10 AD3d 84, 89 [2d Dept 2004]). A parent's disagreement with positions taken by the attorney for a child is not in itself a basis to avoid the obligation to pay for the child's legal fees.

Nor do we believe it was an abuse of discretion for the Family Court to conclude that O'Hern was entitled to compensation for the reasonable value of his services, even in the absence of perfect compliance with 22 NYCRR 1400.2 (*see Moyal v Moyal*, 85 AD3d 614 [1st Dept 2011]).[2] Although there was only one itemized bill, and not one bill sent every 60 days, the court not only set the hourly amount that could be charged, it also conducted a testimonial hearing concerning the reasonableness of the fees. The same referee presided over the matter for its duration, thereby giving the fees that were ultimately awarded the high level of scrutiny required. We decline to disturb that award.

We have considered the father's remaining contentions and find them unavailing. Concur—Tom, J.P., Friedman, Andrias, Gische and Kapnick, JJ.

2. Not argued and not decided here is whether, and if so, how and to what extent 22 NYCRR 1400.2 applies to a privately paid Attorney for the Child appointed pursuant to court order.