Matter of Walter (2020 NY Slip Op 01230)





Matter of Walter


2020 NY Slip Op 01230


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

528274

[*1]In the Matter of the Estate of Paul J. Walter, Deceased. Michael A. Walter, Respondent; Daniel D. Walter, Individually and as Executor of the Estate of Paul J. Walter, Deceased, Appellant.

Calendar Date: January 10, 2020

Before: Garry, P.J., Mulvey, Devine and Colangelo, JJ.


FitzGerald Morris Baker Firth PC, Glens Falls (John D. Aspland Jr. of counsel), for appellant.
Whiteman Osterman & Hanna LLP, Albany (William S. Nolan of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Surrogate's Court of Warren County (Hall Jr., S.), entered December 18, 2018, which, among other things, granted petitioner's application to, among other things, compel respondent to reconvey a parcel of property to decedent's estate.
On January 7, 2003, Paul J. Walter (hereinafter decedent) died in his home in the Town of Johnsburg, Warren County, leaving a will that had been executed in 1998. Decedent was survived by three adult children — Thomas Walter (hereinafter Walter), Susan Prouty and respondent, who was appointed executor of decedent's estate. At the time of his death, decedent had legal title to a parcel of land located in Oregon (hereinafter referred to as Lot 5). Lot 5 was not included among the estate assets listed in the intermediate accounting filed by respondent. Walter filed objections to the accounting, making no mention of Lot 5.
The intermediate accounting proceeding was eventually settled on October 31, 2011, at which time a release was executed by Walter in the presence of his attorney, objections to the accounting were withdrawn and Walter gave his consent to the accounting as filed. In exchange for the release and withdrawal of objections, Walter received $75,000 as a final distribution from the estate. Under the terms of the release, Thomas waived any and all "present and future" claims, "known or unknown," against the estate and was forever barred from making any claim, in any manner, arising out of the administration of the assets of decedent's estate, including the assets set forth in the intermediate accounting.
In November 2015, Walter died intestate, survived by two children, one of whom was petitioner, who was appointed as the personal representative of Walter's estate. In February 2016, on behalf of Walter's estate, petitioner commenced a proceeding against decedent's estate in Oregon challenging that estate's ownership of Lot 5. Petitioner claimed that Walter's estate owned Lot 5 by adverse possession. The Oregon court granted a motion for summary judgment dismissing that proceeding, and the claim of Walter's estate was rejected. An amended petition for probate and to quiet title to Lot 5 was filed by respondent in the same Oregon court alleging causes of action to recover personal property and past and prospective rent payments collected by Walter from 2003 until his death, a practice allegedly continued by petitioner. That matter is currently pending.
In January 2018, respondent conveyed Lot 5 to himself, individually, claiming that Prouty had assigned her interest in that property to him in October 2016, and that the release executed by Walter in 2011 relinquished his interest and that of his heirs (i.e., petitioner) in Lot 5 forever. Petitioner then commenced this proceeding in Surrogate's Court seeking to compel respondent to file an amended accounting of decedant's estate, requesting that the 2011 release by Walter be nullified and seeking to compel respondent to convey Lot 5 back to decedent's estate.[FN1] Respondent answered and cross-moved for the return of the $75,000 given to Walter in consideration for the 2011 release.
Surrogate's Court found that the 2011 release was valid only as it related to the estate's assets and transactions contained in the 2008 accounting and, as Lot 5 was not so included, the release did not apply to any interest that Walter may have had in Lot 5. In so concluding, the court reasoned that "Lot 5 was never discussed by the parties during their settlement discussions and therefore cannot reasonably be deemed to have been addressed by [Walter's] waiver and release." The court indicated that its holding will "afford both parties the opportunity to present their dispute regarding the ownership of Lot 5 to an appropriate Oregon [c]ourt so that it can be resolved on the merits." The court further determined that the release does not preclude Walter's estate from objecting to the supplemental accounting filed by respondent. Respondent's cross motion for the return of the $75,000 was denied, and he was ordered to transfer title to Lot 5 back to decedent's estate until further proceedings are concluded. Respondent appeals.
"Because a release is a contract, its construction is governed by principles of contract law" (Stevens v Town of Chenango [Forks], 167 AD3d 1105, 1106 [2018] [internal quotation marks and citation omitted]; see Mangini v McClurg, 24 NY2d 556, 562-563 [1969]; Salewski v Music, 150 AD3d 1353, 1353 [2017]). Thus, "absent fraud, duress, illegality or mistake, a release that is clear and unambiguous on its face constitutes a complete bar to an action on a claim that is the subject of the release" (Salewski v Music, 150 AD3d at 1353-1354). This is due to the fact that "the signing of a release is a jural act binding on the parties" (Booth v 3669 Delaware, 92 NY2d 934, 935 [1998]; see Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 276 [2011]; Stevens v Town of Chenango [Forks], 167 AD3d at 1106; Ford v Phillips, 121 AD3d 1232, 1234-1235 [2014]). "'Whether the language set forth in a release unambiguously bars a particular claim is a question of law appropriately determined . . . based upon the entire release and without reference to extrinsic evidence'" (Stevens v Town of Chenango [Forks], 167 AD3d at 1106, quoting Salewski v Music, 150 AD3d at 1353 [citations omitted]). Further, "[a] contract may be rescinded when it is shown by clear and convincing proof that a mutual mistake existed when the contract was executed that was so substantial that there was no meeting of the parties' minds" (Lakshmi Grocery & Gas, Inc. v GRJH, Inc., 138 AD3d 1290, 1292 [2016] [internal quotation marks and citation omitted]). In the case of mutual mistake, the burden is on the party seeking to set aside the release (see Mangini v McClurg, 24 NY2d at 563).
The language of the release is clear and unambiguous and, without qualification, "covers any claims, present and future, known or unknown, in any manner arising out of the administration of the assets of the estate of [decedent]." It is undisputed that Walter had acquired legal title to Lot 5 in November 1982 and, thereafter, to an adjoining parcel of property (hereinafter Lot 6). In August 1986, Walter conveyed Lots 5 and 6 to decedent for the sum of $30,000, reportedly to raise money to defend against criminal charges. In 1994, Walter attempted to regain title to both lots from decedent in order to sell them. A deed was prepared by Walter's attorney that, if signed by decedent, would have conveyed both lots back to Walter; however, decedent crossed out and initialed the portion of the deed that referred to Lot 5 and signed the deed as redacted, thereby conveying only Lot 6 to Thomas. Although Lot 5 was never deeded back to him, Walter rented out both lots for two decades, collected rents from the tenants and paid taxes on the lots until his death in 2015.
In November 2014, the tenant of Lot 5 since 2012 attempted to purchase that lot from Walter. When a title search revealed that Lot 5 was titled to decedent, Walter asked his siblings —respondent and Prouty — to convey their inherited interests in Lot 5 to him to facilitate the sale. They refused. This alerted respondent to the fact that there was a parcel of property — Lot 5 — titled to decedent at the time of his death that had not been included in the intermediate accounting of the estate.
We agree with respondent's contention that Surrogate's Court erred in finding an ambiguity in the clear language of the release and in concluding that the release was the product of mutual mistake. The court further erred in relying on extrinsic evidence to reform the release so as to limit its provisions solely to the 2008 accounting. We find that the record fails to establish that Walter had a good faith belief that he owned Lot 5 or that decedent "mistakenly" failed to transfer this land to him. Petitioner's claim that there was a mutual mistake is belied by decedent's explicit redaction of Lot 5 from the deed and the conveyance of only Lot 6 in the 1994 conveyance. Additionally, there is no evidence in the record that Lot 5 was ever deeded back to Walter, or that there were valid grounds to believe that anyone other than decedent owned Lot 5. Accordingly, given the unambiguous language of the release, and the fact that the release was not the product of mutual mistake, it was error for Surrogate's Court to consider extrinsic evidence. Given this conclusion, it was error for the court to direct respondent to transfer title to Lot 5 back to decedent's estate.
Garry, P.J., Mulvey and Devine, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted petitioner's application; petition dismissed; and, as so modified, affirmed.



Footnotes

Footnote 1: A supplemental accounting that included Lot 5 was filed in May 2018.