Matter of Nicole V. (Jordan U.) (2021 NY Slip Op 01538)





Matter of Nicole V. (Jordan U.)


2021 NY Slip Op 01538


Decided on March 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 18, 2021

530629

[*1]In the Matter of Nicole V., Petitioner,
Jordan U., Appellant. (And Another Related Proceeding.)

Calendar Date: February 5, 2021

Before: Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Lindsay H. Kaplan, Kingston, for appellant.
Pamela Doyle Gee, Big Flats, attorney for the child.



Garry, P.J.
Appeal from an order of the Family Court of Chemung County (Rich Jr., J.), entered November 6, 2019, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of one daughter (born in 2015). For a short period following their physical separation, the parties informally shared custody of their daughter. The father filed a custody petition in September 2018; on the following day, the mother commenced the first proceeding seeking custody of the child with parenting time for the father.[FN1] Family Court issued a temporary custody order in January 2019, granting custody to the mother with parenting time to the father as agreed by the parties. In April 2019, the father filed a petition commencing the second proceeding, seeking modification of the temporary order. Following a fact-finding hearing, the court concluded that joint custody was not appropriate as the parties could not effectively communicate, and that it was in the child's best interests to award sole custody to the mother, with a schedule of liberal parenting time to the father. The father appeals.[FN2]
"Where, as here, Family Court is presented with an initial custody determination, the paramount consideration is the best interests of the child" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1421 [2018] [citations omitted]; see Matter of Nicole TT. v David UU., 174 AD3d 1168, 1169 [2019]). "In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent, and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Shirreece AA. v Matthew BB., 166 AD3d at 1421 [citations omitted]; see Hassan v Barakat, 171 AD3d 1371, 1373 [2019]). "Given that Family Court is in a superior position to evaluate testimony and assess witness credibility, we accord great deference to Family Court's custody determinations, and we will not disturb such a determination if it is supported by a sound and substantial basis in the record" (Matter of Amanda YY. v Ramon ZZ., 167 AD3d 1260, 1261 [2018] [internal quotation marks and citations omitted]; see Matter of Mark B. v Tameka D., 183 AD3d 1038, 1041 [2020]).
At the fact-finding hearing, the mother testified that she and the father ended their relationship in May 2018, and she moved out of the father's home. She indicated that from May 2018 until about September 2018, the parties agreed on a custody schedule, with the father or the child's paternal grandparents caring for the child while the mother worked, usually Friday through [*2]Monday. However, the mother claimed that the father became "very angry" and allegedly refused to return the child as agreed upon, after learning that the mother was in a new relationship. The mother also testified that she believed that the father was making disparaging remarks about her in the child's presence. As a result, the mother made other arrangements for child care while she worked, rather than contacting the father or the paternal grandparents.[FN3]
The mother alleged that there had been incidents of domestic violence between her and the father. She testified regarding an incident in October 2018 where the father shoved her, causing bruises on her chest and a broken nail, and slammed her cell phone on the ground.[FN4] The mother thereafter obtained an order of protection against the father, and the parties began communicating through third parties to exchange information about the child. As to caring for the child, the mother indicated that she schedules the child's medical appointments, enrolled the child in school and dance classes, and maintains health insurance for the child. She described a recent incident where the father allegedly contacted her to pick up the child from his care as the child was sick and needed medical treatment. The mother testified that the father has not attended any recent medical appointments for the child and that the father cannot take the child to dance classes as he was banned from the dance studio. The mother continues to contact the child's paternal grandparents or the father's girlfriend to relay information about the child to the father.
The mother shares a two-bedroom apartment with the child, her boyfriend and the boyfriend's seven-year-old daughter, and she testified that the child and the boyfriend's daughter share a bedroom with separate beds. The mother's boyfriend has custody of his daughter, is employed and is currently on parole, and there have been no instances of domestic violence. The mother described her support system as her mother and sister and testified that she initially wanted a "50/50" schedule with the father, but now wants the father to have supervised parenting time. However, she testified that she did not want to take the child away from the father, that she was willing to work with the father so he can have a relationship with the child, and that she would be willing to communicate with the father through text messages or some other written form of communication.
The father testified and described his living arrangements, where he rents a home with his girlfriend of two years and where the child has her own bedroom. As to the mother's allegations of domestic violence, the father alleged that the mother had entered his home and caused "a huge scene" in front of the child. He also claimed that the mother "attacked" him and scratched him, but denied shoving the mother or slamming her cell phone on the ground. The father, who was on parole and probation at the time of [*3]the fact-finding hearing, testified that he had completed an anger management course, but he admitted to using profanity before Family Court following completion of the course.
As to a custody arrangement, the father initially stated that he wished to share legal and physical custody with the mother, but that he was unwilling to communicate directly with the mother, stating that he felt he was being "push[ed] . . . to try to have communication with [the mother]." He indicated that his parole officer advised him to avoid any contact with the mother and her boyfriend, and the father suggested that the parties could continue to communicate through the paternal grandparents, which he felt had been effective in the past, or his girlfriend. He testified that he wants to be involved in the child's life, including attending the child's medical appointments and school events, and would communicate with the mother through third parties in order to stay involved. The father is unemployed and on disability due to various medical conditions, and testified that he is available to care for the child "24/7," although he did indicate that his medical conditions sometimes caused him to be sick.
The child's paternal grandmother testified that she facilitated communications between the parties following the end of their relationship, and that she would be willing to continue in that role. She further stated that she and her husband often cared for the child when the mother worked, even on short notice, but now the child is often cared for by the boyfriend's mother. However, the mother has recently brought the child to her home for short visits. As to domestic violence, the grandmother denied that the father was physically violent toward the mother, but stated that "both [the mother and the father] laid hands on each other." The child's paternal grandfather also testified that, to his knowledge, the mother has never had difficulty getting in touch with him to arrange child care or communicate information about the child to the father.
Although both parents sought joint legal and physical custody of the child, their positions changed throughout the fact-finding hearing. Upon review, we agree with Family Court that joint legal custody is not appropriate, "as the mother and the father are unable to communicate with each other in a meaningful and effective manner" (Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1168 [2020]; compare Matter of Elizabeth B. v Scott B., 189 AD3d 1833, 1835-1836 [2020]). The record evidence demonstrated that both parents offer stable home environments, with support of family members and others, and, although the court expressed some criticism of their parenting, neither parent was found to be unfit.
However, the mother has cared for the child since birth, enrolled the child in school and dance classes, and arranged medical appointments and medical care for the child. The mother expressed a willingness to communicate with [*4]the father for the purpose of facilitating his parenting time, promoting the child's relationship with him, and keeping him informed about the child. The father expressed an unwillingness to communicate with the mother at all, except through third parties, and saw no issue with continuing to utilize third parties to communicate with the mother. Considering the testimony presented, and deferring to Family Court's factual findings and credibility assessments, upon review we find a sound and substantial basis in the record to support the award of sole custody to the mother with a liberal parenting time schedule to the father (see Matter of Bonnie AA. v Kiya DD., 186 AD3d 1784, 1788 [2020], lv denied 36 NY3d 933 [2020]; Matter of Christopher Y. v Sheila Z., 173 AD3d 1396, 1399 [2019]).
Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father's initial petition was subsequently dismissed by Family Court without prejudice, based upon his failure to appear, and is not part of the record on appeal.

Footnote 2: The attorney for the child submitted a brief supporting Family Court's determination.

Footnote 3: During the course of the hearing, which spanned several months, the parties agreed that the father would have parenting time with the child every other weekend and a few hours on one additional day each week.

Footnote 4: The father pleaded guilty to disorderly conduct in relation to this incident.