Matter of Amanda YY. v Faisal ZZ. (2021 NY Slip Op 05750)





Matter of Amanda YY. v Faisal ZZ.


2021 NY Slip Op 05750


Decided on October 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 21, 2021

530511
[*1]In the Matter of Amanda YY., Respondent,
v
Faisal ZZ., Appellant. (Proceeding No. 1.)
In the Matter of Faisal ZZ., Appellant,
v
Amanda YY., Respondent. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date:September 14, 2021

Before:Garry, P.J., Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Todd G. Monahan, Schenectady, for appellant.
Jean M. Mahserjian Esq. PC, Clifton Park (Jean M. Mahserjian of counsel), for respondent.
Alexandra G. Verrigni, Rexford, attorney for the children.



Garry, P.J.
Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered August 27, 2019, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' children.
Amanda YY. (hereinafter the mother) and Faisal ZZ. (hereinafter the father) are the parents of two children (born in 2013 and 2016). More than a year after the parties' relationship ended and the father moved out of the mother's residence, she commenced proceeding No. 1 seeking sole custody of the children. The father cross-petitioned for sole custody. Following an initial appearance, Family Court issued a temporary order granting the parties joint legal custody with primary physical custody to the mother and parenting time to the father four days each week. After the hearing commenced, the mother filed a family offense petition alleging that the father abused one of the children during his parenting time. Family Court issued a temporary order of protection requiring the father to stay away from the mother and the children, later modified to grant the father therapeutic visitation. At the conclusion of the hearing, Family Court dismissed the mother's family offense petition, finding that she failed to establish the allegations by a fair preponderance of the evidence, but ordered sole legal and primary physical custody of the children to the mother, with therapeutic or supervised parenting time to the father. The father appeals.
"When rendering an initial custody determination, the paramount consideration for Family Court is determining the best interests of the children" (Matter of Samantha GG. v George HH., 177 AD3d 1139, 1140 [2019] [citations omitted]; see Matter of Nicole V. v Jordan U., 192 AD3d 1355, 1355 [2021]). "Where the parents are unable to effectively and directly communicate with one another to care for the children's needs, an award of joint legal custody may not be feasible or appropriate" (Matter of Adam E. v Heather F., 151 AD3d 1212, 1213 [2017] [internal quotation marks, brackets and citations omitted]). "Given that Family Court is in a superior position to evaluate testimony and assess witness credibility, we accord great deference to Family Court's custody determinations, and we will not disturb such a determination if it is supported by a sound and substantial basis in the record" (Matter of Nicole V. v Jordan U., 192 AD3d at 1356 [internal quotation marks and citations omitted]). Joint custody was not appropriate here because the parties did not effectively communicate regarding the children. Testimony and text messages received in evidence demonstrated that, when the mother attempted to arrange a parenting schedule, the father threatened her with litigation, and, when she attempted to obtain his consent for placing one child in counseling, he refused to consent and blamed her for mistreating the child. The mother and another witness testified that when [*2]the father returned the children to her, he refused to respond to questions about their basic activities, such as whether they had gone to the bathroom, napped or eaten. Under the circumstances, Family Court did not err in granting the mother sole legal custody.
"As relevant here, Family Court may order supervised visitation where circumstances demonstrate that unsupervised visitation would be detrimental to the child[ren]'s safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Jorge JJ. v Erica II., 191 AD3d 1188, 1191 [2021] [internal quotation marks and citations omitted]; see Matter of Adam E. v Heather F., 151 AD3d at 1214-1215). Although the father had spent time each day with the children after the parties separated, and he watched them throughout the day for several months while he recuperated from surgery and the mother was working, the record supports Family Court's finding that he has shown "questionable judgment, and parenting practices." The mother and several day care providers testified that, after they spent time with the father, the children would be covered in the residue of sugary snacks or kitchen grease and were almost always wet. The father admittedly did not carry a diaper bag outside the home when he would exercise his parenting time of 3½ hours with his toddler child, and the children would often suffer from diaper rash after spending time with the father. Several day care providers ceased caring for the children due to negative interactions with the father.
The older child was burned on her buttocks by a hot iron while in the father's care. He treated the burn with toothpaste and a band-aid. It is unclear why he placed the iron on the floor while it was still hot, why the children were allowed to play near the iron and, based on the location of the burn, whether the child was wearing any clothing at the time.
Although the father clearly loves his children, the record also supports finding that he places his own interests above theirs and appears unable to understand their age-appropriate needs. For example, if, when the older child was an infant, he returned home from work late at night and wanted to play with her, he would wake her. He forgot the older child's fourth birthday and justified it because he does not celebrate birthdays, stating that if the children want to do so they can tell him. When the older child had trouble separating from the mother and asked that the mother buckle her into the father's car, the father threatened that he would not take her with him and would only take the younger child, until the older child cried and begged to be taken as well. The older child's counselor has diagnosed separation anxiety and opined that the father is a big source of stress for her. The counselor recommended that the child have only therapeutic visitation with the father at this time.
The father owns a restaurant, in which he is [*3]the sole employee, responsible for cooking, waiting on customers, serving and cleaning. However, he does not believe in day care and testified that he should be allowed to care for his two young children in the back of the restaurant, with no apparent awareness that this environment could be unsafe or inappropriate for toddlers due to the risks of physical harm from kitchen items such as knives, stoves and hot cooking oil. He has no contact with his children from his first marriage, yet he refuses to accept any responsibility for the breakdown of their relationship and believes that the parenting style he developed with those children will work well with the two subject children.
Testimony indicated that the father allowed the children — the oldest of whom was five years old at the end of the hearing — to run and play in parking lots and the street. Though the father correctly notes that the older child did not swallow a small object that he allowed her to play with, he apparently fails to comprehend that small objects present a choking hazard for toddlers. His assertion that no item is inappropriate for children to play with as long as he is around — because he maintains that he can protect his children — highlights his poor parental judgment and decision-making abilities.
Although Family Court dismissed the family offense petition, the record does not support the father's assertion that the mother was attempting to alienate the children from him by making false accusations of sexual abuse. The underlying incident was reported to Child Protective Services by a day care provider and hospital employees, not the mother. Although the reports were ultimately deemed unfounded and the police investigation was closed due to lack of evidence, the record nonetheless indicates that the younger child had bruising around her genitalia and, though she had only limited verbal abilities, made comments that could be interpreted to mean that the father had hurt her in that area. The mother was initially advised by the police to file a petition and seek an order of protection. There thus appeared to be a basis for the allegations in the family offense petition. The mother's failure to establish those allegations does not undermine the evidence of the father's lack of insight regarding the children's physical and emotional well-being; these inadequacies of the father support the custody determination even though the mother failed to adequately prove that the father sexually abused one of the children. Under the circumstances, there is a sound and substantial basis in the record for Family Court's determination to grant the mother primary physical custody and require that the father's parenting time be supervised or in a therapeutic setting (see Matter of Jorge JJ. v Erica II., 191 AD3d at 1191-1192; Matter of Donald EE. v Cheyenne EE., 177 AD3d 1112, 1115-1116 [2019], lvs denied 35 NY3d 903 [2020]).
The father's allegations that Family Court was biased [*4]against him are unpreserved, as he failed to object on that ground or seek recusal (see Matter of Mary Ellen H. v Joseph H., 193 AD3d 1275, 1276 [2021]; Matter of Patrick EE. v Brenda DD., 129 AD3d 1235, 1238 [2015], lv denied 26 NY3d 908 [2015]). In any event, the court did not demonstrate any discernable indicia of bias. Similarly, the father did not object on the grounds of bias by, or seek removal of, the attorney for the children (hereinafter AFC) to preserve such argument. In any event, although an AFC "should not have a particular position or decision in mind at the outset of the case before the gathering of evidence[,] . . . [a]fter an appropriate inquiry, it is entirely appropriate, indeed expected, that a[n AFC] form an opinion" (Cervera v Bressler, 50 AD3d 837, 840-841 [2008] [internal quotation marks and citations omitted]; see Family Ct Act § 241). As it is the role of the AFC to advocate for the children, taking a position contrary to one of the parents is not an indication of bias (see 22 NYCRR 7.2 [d]; Matter of Brooks v Greene, 153 AD3d 1621, 1622 [2017]; Matter of Donna Marie C. v Kuni C., 134 AD3d 430, 431 [2015]; Matter of Aaliyah Q., 55 AD3d 969, 971 [2008]). The AFC's unfavorable characterizations of the father were not "personal and unreasoned prejudging of the issues but, rather, a professional judgment about [the father's] character and fitness as a parent based on proof of [his] conduct" (Matter of Nicole VV., 296 AD2d 608, 614 [2002] [internal quotation marks and citation omitted], lv denied 98 NY2d 616 [2002]).[FN1]
Pursuant to 22 NYCRR 217.1 (a), Family Court must appoint an interpreter for "an interested parent . . . of a minor party" if the court determines that the parent "is unable to understand and communicate in English to the extent that he or she cannot meaningfully participate in the court proceedings." "The determination as to whether a court-appointed interpreter is necessary lies within the sound discretion of the trial court, which is in the best position to make the fact-intensive inquiries necessary to determine whether there exists a language barrier such that the failure to appoint an interpreter will deprive an individual of his or her constitutional rights" (Matter of James U. v Catalina V., 151 AD3d 1285, 1286-1287 [2017] [internal quotation marks, brackets and citations omitted]). The father did not request an interpreter. He testified that, although his native language is Urdu, he had lived in the United States for 20 years, had passed the citizenship test and was awaiting the oath ceremony, his children speak only English, he single-handedly ran his own restaurant for approximately 10 years and he understood 98% of the English spoken in the courtroom, including the questions asked by both his counsel and the mother's counsel. He stated that he would "speak up" if he could not understand what was going on at the hearing, and a few times he indicated that he did not understand, resulting in [*5]questions being reframed.[FN2] Under the circumstances, Family Court did not abuse its discretion by failing to sua sponte appoint an English language interpreter (see id. at 1287; People v Warcha, 17 AD3d 491, 492-493 [2005], lvs denied 5 NY3d 762, 771 [2005]; see also People v Thomas, 169 AD3d 1255, 1256 [2019], lvs denied 33 NY3d 1033, 1036 [2019]).
Finally, viewing the record in its totality, we reject the father's contention that he was denied the effective assistance of counsel (see Matter of Brent O. v Lisa P., 161 AD3d 1242, 1246-1247 [2018]; Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010-1011 [2018]).
Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The AFC had strong opinions from the outset of these proceedings arising from his role and service as AFC for the father's older children in prior custody proceedings. It was not inappropriate for the AFC to form opinions from evidence of the father's parenting style and abilities that he gleaned from those prior proceedings.

Footnote 2: At one point, the father stated that he did not "know what overruled means." However, that could represent a failure to understand legal terms, rather than the English language.