Harari v Rosakranse

2026 NY Slip Op 02175

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Simone Harari, Appellant,

v

Steven Rosakranse, Respondent.

Decided and Entered:April 9, 2026

CV-23-0769

Calendar Date: February 17, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mackey, JJ.

Simone Harari, Stone Ridge, appellant pro se.

Christina Randazzo Law, PLLC, Fishkill (Christina Randazzo of counsel), for respondent.

[*1]

Reynolds Fitzgerald, J.

Appeals (1) from an order of the Supreme Court (Richard Mott, J.), entered March 24, 2023 in Ulster County, which, among other things, granted defendant's cross-motion to modify a child support obligation, and (2) from an order of said court, entered March 24, 2023 in Ulster County, which granted defendant's motion for an award of counsel fees.

Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) are the divorced parents of three children (born in 2001, 2003 and 2005). In 2014, the parties entered into a divorce stipulation (hereinafter divorce stipulation) which was incorporated but not merged into a judgment of divorce. The divorce stipulation sets forth the husband's child support obligations. In January 2020, the husband filed a petition for reorganization pursuant to chapter 13 of the Bankruptcy Code, prompting the wife to commence an adversary proceeding seeking to exempt from discharge the husband's obligations under the divorce stipulation. Thereafter in November 2020, the parties executed a global stipulation of settlement (hereinafter the bankruptcy stipulation) and attendant release of claims, resolving and waiving all claims between the parties which arose prior to the filing of the husband's bankruptcy petition.

In September 2021, the wife moved in Supreme Court to hold the husband in contempt for failing to make certain payments required by the divorce stipulation, including his failure to pay the children's medical and educational expenses and her life insurance premiums. The husband opposed the wife's motion and cross-moved to downwardly modify his child support obligations based on a substantial change in circumstances from having a stroke/seizure, resulting in him being disabled and unable to work. Supreme Court held a multiday hearing on the motions wherein it limited the wife's contempt claims to those occurring subsequent to the husband's filing of his bankruptcy petition. Following the hearing, Supreme Court denied the wife's contempt motion finding that the husband's disability and resultant reduced income established a defense to his failure to pay, modified the husband's child support obligations, found that the husband was not obligated to pay certain medical expenses nor the wife's life insurance premiums, granted the husband a credit for his overpayments of support and for the children's medical and education expenses and granted the husband counsel fees. The wife appeals.

The wife initially contends that Supreme Court erred in limiting the evidence at the hearing to claims occurring subsequent to the filing of the husband's bankruptcy petition. We disagree. A parent can expressly waive his or her right to unpaid child support; however, such a waiver must evince a voluntary and intentional abandonment of said right (see Decker v Decker, 148 AD3d 1272, 1273 [3d Dept 2017]; Matter of Hastie v Tokle, 122 AD3d 1129, 1129-1130 [3d Dept 2014]). "Because a release is a contract, its construction is governed [*2]by principles of contract law" (Matter of Walter, 180 AD3d 1201, 1203 [3d Dept 2020] [internal quotation marks and citations omitted]). "In that regard, there is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties. . . . [A] valid release generally constitutes a complete bar to an action on a claim which is the subject of the release" (Marcella v Glowacki, 233 AD3d 1137, 1140 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Matter of Walter, 180 AD3d at 1203).

In November 2020, the parties executed the bankruptcy stipulation encompassing the parties' disputes and resolution of those disputes in Bankruptcy Court, including the wife's claim for prepetition child support. Paragraph six of said stipulation sets forth that "[a]ny obligations of the [p]arties[ ] to each other in connection with any matter addressed herein, accruing prior to the execution of the [s]tipulation and not specifically addressed in this [s]tipulation shall be waived and released by the [p]arties." Paragraph seven states that "any and all ongoing [o]bligations under the [divorce] [s]tipulation shall be enforceable by the [p]arties in the [m]atrimonial [a]ction and the automatic stay (to the extent applicable) is hereby vacated to permit the [p]arties to enforce such [o]bligations. . . . To be clear, there shall be no waiver of future enforcement proceedings under the [divorce] [s]tipulation except as otherwise resolved herein" (emphasis added).FN1 The language of the bankruptcy stipulation is clear and unambiguous. Pursuant to it, the parties waive any prepetition claims arising from the divorce stipulation; at the same time, it lifts the bankruptcy automatic stay with respect to future claims. Therefore, Supreme Court properly determined that the enforcement proceeding should be limited to claims arising subsequent to the filing of the husband's bankruptcy petition (see Matter of Woolfolk v New York City Bd./Dept. of Educ., 161 AD3d 643, 644 [1st Dept 2018]; Hannigan v Hannigan, 104 AD3d 732, 734-735 [2d Dept 2013], lv denied 21 NY3d 858 [2013]; Parmigiani v Parmigiani, 250 AD2d 744, 745 [2d Dept 1998]).

Next, the wife argues that Supreme Court erred in granting the husband's cross-motion to downwardly modify his child support obligation both because he failed to file a sworn statement of net worth and that any reduction in his income was voluntary. Although the husband was required to file a statement of net worth with his cross-motion (see 22 NYCRR 202.16 [k] [2]) and Supreme Court should have directed the husband to do so, the court did not summarily grant the husband's cross-motion; instead it held a multiday hearing which allowed the court to consider the parties' relative financial circumstances prior to rendering a determination (see Castro v Kaminski, 197 AD3d 609, 611 [2d Dept 2021]; Harold v Harold, 133 AD3d 1376, 1378 [4th Dept 2015]).

"Generally, a party seeking [*3]modification of a child support provision derived from an agreement or stipulation incorporated but not merged into a judgment of divorce has the burden of proving, insofar as is relevant here, that an unanticipated and unreasonable change [in] circumstances has occurred" (Matter of Frederick-Kane v Potter, 155 AD3d 1327, 1329 [3d Dept 2017] [internal quotation marks and citations omitted]; see Matter of Sidoti v Sidoti, 41 AD3d 944, 944-945 [3d Dept 2007]). At the hearing, the wife stipulated that the husband has a permanent total disability for which he now receives Social Security disability benefits. Additionally, the husband's sister testified that in February 2021, the husband had a stroke/seizure resulting in the husband having difficulties with his gait, speech, short term memory, dexterity and that he is unable to drive or return to work. Also, the sister stated that she acts on behalf of the husband via a power of attorney, including paying his bills and she must take him grocery shopping.FN2 Although the wife contends that the husband has the ability to continue to provide child support through other sources of income, as he continues to have a 49% ownership interest in his family's business, she failed to present any evidence in support of this allegation. To the contrary, the only evidence produced at trial with respect to any income the husband received from the family business came from the testimony of his sister, who owns 51% of the business. She testified that since his receipt of company-provided executive's disability insurance payments from February through August 2021, the husband has not received any draws, distributions, salary or other income from it. Accordingly, Supreme Court properly determined that the husband's loss of employment due to his disability was unanticipated, resulting in significantly diminished income, and warranted a downward modification of child support (see Smith v Smith, 91 AD3d 1083, 1084 [3d Dept 2012]; Matter of Silver v Reiss, 74 AD3d 1441, 1442 [3d Dept 2010]; Matter of Perry v Pica, 22 AD3d 903, 904 [3d Dept 2005]).

The wife next takes issue with several determinations within Supreme Court's support order. Perhaps most significantly, the wife asserts that Supreme Court erred in affording the husband a credit in the amount of $24,396.36 in his monthly child support obligation plus any amounts he paid in excess of the court-ordered reduced monthly amount as of the date of the filing of his cross-motion; and an additional credit in the amount of $1,839.86 for his overpayments to educational and medical expenses in light of his reduced proportionate share of same. The order is silent as to where these credits are to be applied, and, in light of this, we remit the matter to Supreme Court for clarification of same. However, in so doing we caution that the Child Support Standards Act has no provision for recouping said payments, which is in keeping with New York's strong public policy against recouping [*4]overpayments from future support (see Matter of Weaver v Weaver, 198 AD3d 1168, 1170 [3d Dept 2021], lv denied 41 NY3d 1010 [2024]; Johnson v Johnson, 172 AD3d 1654, 1657 [3d Dept 2019]).

The wife further claims that Supreme Court erred in its findings that the husband is entitled to a credit for college costs related to room and board, that he was not obligated to pay premiums for her life insurance policy and denying her request for reimbursement for certain medical expenses for the children's DNA testing. Initially, we find no error in its mandates that the husband's payment of his pro rata share of educational expenses which constitute payment for room and board shall reduce, proportionately, his monthly child support payments. "A court is entitled, depending on the particular facts and circumstances of a case, to make an adjustment in child support where the noncustodial parent contributes to college expenses and said expenses include room and board" (Matter of Houck v Houck, 246 AD2d 905, 906 [3d Dept 1998] [citations omitted]). "[T]he availability and amount of such a credit depend upon the facts and circumstances in the particular case, taking into account the needs of the custodial parent to maintain a household and provide certain necessaries" (Matter of Apjohn v Lubinski, 114 AD3d 1061, 1064 [3d Dept 2014] [internal quotation marks, brackets and citation omitted], lv denied 23 NY3d 902 [2014]; see Matter of Covington v Boyle, 127 AD3d 1393, 1395 [3d Dept 2015]). Based on the parties' significant disparity in income, the husband's inability to earn income other than Social Security disability due to his illness and the fact that the wife will not have any children residing in her household while the youngest child is attending college, the court did not abuse its discretion in determining that the husband is entitled to an adjustment to his child support payments (see Matter of Apjohn v Lubinski, 114 AD3d at 1064; Matter of Kirschner v Kirschner, 119 AD2d 962, 963 [3d Dept 1986]).

Next, Supreme Court's finding that the husband had no obligation to pay the wife's life insurance premiums was not in error. Contrary to the wife's contention, this determination was not a sua sponte one by the court that was beyond the scope of the husband's cross-motion. Rather, it was based on that aspect of the wife's contempt motion seeking to hold the husband in contempt for failure to pay it. With respect to said motion, the court had to first determine if the husband had a legal obligation — pursuant to the divorce stipulation — to pay said premiums. Here, the divorce stipulation is void of any language requiring the husband to pay the wife's life insurance premium. Paragraph 9.3 of the divorce stipulation sets forth that "[t]he [h]usband shall maintain term or whole life insurance in the amount of at least $500,000 on his life, naming the children or a testamentary trustee for the benefit of the children as beneficiary, until the emancipation of the [*5]children." The divorce stipulation then delineates three life policies that the husband shall maintain. The stipulation does not list the wife's life insurance policy. More importantly, the principle underlying maintaining life insurance on a payor spouse's life is that "[t]he death of a payor spouse . . . may cause financial injury to a former spouse or children who, but for the payor spouse's death, would have continued to receive maintenance, a distributive award, or child support. Accordingly, the Legislature has provided that a court may require a payor spouse to maintain life insurance to prevent that financial injury" (Mayer v Mayer, 142 AD3d 691, 696 [2d Dept 2016], lv dismissed 28 NY3d 1100 [2016], lv denied 29 NY3d 918 [2017]; see Holterman v Holterman, 307 AD2d 442, 443 [3d Dept 2003], affd 3 NY3d 1 [2004]). As the divorce stipulation did not obligate the husband to maintain life insurance on the wife's life and further because she is the recipient of and not the payor spouse, Supreme Court did not abuse its discretion in finding that the husband did not have an obligation to pay the wife's life insurance premium (see Bell-Vesely v Vesely, 180 AD3d 1272, 1275 [3d Dept 2020]).

The wife's contention that Supreme Court rewrote the divorce stipulation when it found that the bills for the children's DNA testing were not qualifying medical expenses for which defendant is responsible has merit. "A [divorce stipulation] is a legally binding and enforceable contract, subject to ordinary principles of contract construction and interpretation. Where a [divorce stipulation] is clear and unambiguous on its face, the parties' intent must be discerned from the four corners of the document, without resort to extrinsic evidence" (Matter of Dillon v Dillon, 155 AD3d 1271, 1272 [3d Dept 2017] [citations omitted]; see Martin v Martin, 204 AD3d 1318, 1319 [3d Dept 2022]). The divorce stipulation, paragraph 8.5, states that "the parties agree that any medical, dental or orthodontic expenses not reimbursed by insurance shall be paid by the [h]usband." The agreement is clear and unambiguous; there are no conditions precedent to the husband paying for unreimbursed medical expenses. "Medical services are services in connection with the diagnosis, prevention, and/or treatment of a disease of the body or mind" (Matter of Connolly v Connolly, 37 AD3d 717, 718 [2d Dept 2007] [citations omitted]). At the hearing, the wife testified that the bills pertaining to the children's DNA testing were for "diagnostic testing, a consultation for the results of the diagnostic testing and then treatments to address those results of the diagnostic testing"; specifically the services involved chromosomal and genetic testing of the children. The wife further testified that she advised the husband of the DNA testing prior to obtaining said services. As the bills were for medical services, the husband was obligated to reimburse the wife.

The wife's allegations that Supreme Court was [*6]biased against her are unpreserved, as she failed to object on that ground or seek recusal (see Theodore P. v Debra P., 209 AD3d 1146, 1147 [3d Dept 2022]); Matter of Amanda YY. v Faisal ZZ., 198 AD3d 1125, 1129 [3d Dept 2021], lv denied 38 NY3d 908 [2022]).

Lastly, the wife argues that Supreme Court erred in granting the husband counsel fees. We disagree. Domestic Relations Law § 238 authorizes a court to make a discretionary award of counsel fees upon an enforcement or modification motion (see Weaver v Weaver, 198 AD3d at 1146; Seale v Seale, 154 AD3d 1190, 1196 [3d Dept 2017]). The wife's continued argument that the husband's failure to file a statement of net worth also precludes a counsel fee award is similarly meritless (see Jeffrey P. v Alyssa P., 202 AD3d 1409, 1413 [3d Dept 2022]). Moreover, this was not an interim award of counsel fees, it was a final award rendered after a six-day hearing and the submission of testimonial and documentary evidence, including the husband's income tax returns and his family's business' corporate income tax returns. Thus, Supreme Court had ample opportunity to consider the parties' respective finances in determining that the husband was the less monied spouse. In light of the husband's success in modifying his child support obligations, we cannot say that the award to the husband was an abuse of discretion (see Jeffrey P. v Alyssa P., 202 AD3d at 1413; Weaver v Weaver, 198 AD3d at 1146). To the extent not expressly addressed herein, the wife's remaining contentions have been reviewed and found to lack merit.

Aarons, J.P., Pritzker, Fisher and Mackey, JJ., concur.

ORDERED that the order granting defendant's cross-motion to modify his child support obligation is modified, on the law and the facts, without costs, by directing defendant to pay medical bills related to the children's DNA testing and diagnosis; matter remitted to the Supreme Court to determine how any overpayments are to be recouped; and, as so modified, affirmed.

ORDERED that the order awarding defendant counsel fees is affirmed, without costs.

Footnotes

Footnote 1: The bankruptcy stipulation further limited the adversary proceeding claims and counterclaims to be litigated in Bankruptcy Court to three issues — the amount of special maintenance due to the wife, the amount owed to the wife for legal fees and any issues pertaining to life insurance policies.

Footnote 2: While the husband was called as a witness, he had apparent and significant difficulties speaking and answering questions and his testimony was limited.